# Authority of the Federal Bureau of Investigation to Investigate Police Killings

The Federal Bureau of Investigation is not presently authorized to investigate killings of non-federal law enforcement officers which involve only violations of state law, even in response to a presidential directive.

January 16, 1981

## MEMORANDUM OPINION FOR THE DIRECTOR, FEDERAL BUREAU OF INVESTIGATION

This responds to your request for our views on the extent of the Federal Bureau of Investigation's (FBI's) authority to investigate the killing of a non-federal law enforcement officer when requested to do so by a local law enforcement official. Your question is directed specifically to investigations involving violations of state law but not federal law. In addition to the threshhold question of authority, you also pose questions regarding the form of the request for assistance (whether written or oral); the need, if any, to seek statutory authority for the investigation; and the propriety of continuing the investigations in advance of this legislation. We conclude that the FBI does not presently have the authority to conduct these investigations. The form of the request for assistance is therefore irrelevant. Whether legislation should be sought to authorize investigations of this nature depends on whether the FBI desires to continue to respond to requests for assistance from local authorities. If so, legislation must be sought; and the FBI has no authority to conduct such investigations in the interim.

### I. Background

The FBI's investigation of killings of non-federal law enforcement officers apparently began in response to a presidential directive of November 1, 1970, from President Nixon to Attorney General Mitchell.[1] Noting the increasing number of assaults on law enforcement

---

[1] Our search for communications or memoranda discussing the legality of the proposed investigations has disclosed no record in the files of this Office or anywhere else in the Department prior to the date of the directive. We have also made informal inquiries at the Office of Management and Budget and have been advised that background documents that may have been connected to President Nixon's directive, if any, are no longer retrievable.

45

officers, President Nixon directed the Attorney General "to make available all appropriate investigative resources of the Department of Justice to work jointly with State or local police when requested in any case involving an assault upon a police officer." [2] Subsequently, on June 3, 1971, President Nixon met with the Attorney General, the Director of the FBI, Representatives of Congress, and 19 police executives from around the country. The President announced that, in addition to the previously available services of the FBI laboratory, the Identification Division, the National Crime Information Center, and the investigation of out-of-state leads, the FBI would actively participate in the investigation of police killings when a local law enforcement agency requested the assistance. On June 4, 1971, the FBI Director instructed all field divisions regarding the new policy, advising them to obtain a written request for assistance and then "work the investigation like we would a bank robbery case, jointly, toward the solution of the killing."

An internal FBI memorandum of June 5, 1971, recognized "the unique situation involved[,] there being at this time no Federal law providing penalties for the killing of a local law enforcement officer." Accordingly, the memorandum advised that the views of the Department of Justice should be sought on some of the legal issues incident to the new policy. By memorandum of the same date, the Director of the FBI requested an opinion from the Attorney General regarding the FBI's jurisdiction to investigate a purely local offense. [3]

The Assistant Attorney General in charge of the Criminal Division replied by memorandum of June 28, 1971. Having noted a proposed line item for inclusion in the FBI's annual appropriation providing for investigation of police killings, the memorandum concluded that FBI jurisdiction to investigate posed no problem. "Congressional authorization to expand funds for assistance of state law enforcement activities appears to us a proper exercise of the spending power." [4]

The appropriation apparently relied on in that June 28, 1971, memorandum was not enacted as proposed; and questions about the FBI's jurisdiction continued. On November 1, 1979, the FBI's Legal Counsel Division, by memorandum for the Assistant Director, Planning and Inspection Division, discussed the legality of FBI investigations of police killings and concluded that there was no specific statutory au-

[2] According to an internal FBI memorandum of June 4, 1971, the purpose of the change in policy was to forestall, if possible, the passage of the many bills pending in Congress which would have required the FBI to take over the investigation of police killings. The FBI has consistently resisted all such legislation as an instrusion on local law enforcement responsibilities, and, in some cases, as an excessive demand on FBI investigative resources.

[3] The request was primarily concerned with the FBI's authority to arrest, search, or interrogate a suspect in connection with a local offense.

[4] The memorandum also noted the desirability of a more explicit statutory authorization for warrantless arrests by the FBI in cases not involving violations of federal law. It is not clear from the memorandum whether authority for the investigation of police killings was thought to exist. But it does appear that further statutory authority was thought to be necessary and, moreover, that inclusion of the line item in the appropriation was expected to suffice.

46

thority. The memorandum suggested that the investigations might be justified because Congress had been made aware of the investigations by statements by the Director in appropriations hearings. "Subsequent Congressional action in appropriating funds for these activities could be construed as tacit approval . . . ." Still, the memorandum recognized the implication of a memorandum of this Office of March 22, 1978, entitled "FBI Cooperation with State or Local Authorities," [5] which advised that the FBI had no authority to conduct interviews for the benefit of state and local law enforcement agencies where there was no possible violation of federal law. Although noting that the March 22 memorandum did not specifically address the question of FBI authority to act in response to a presidential directive, the Legal Counsel Division concluded that our memorandum did "point out the necessity for clarification in this area." Your request for our advice followed.

## II. The FBI's Legal Authority to Investigate

The FBI's investigative authority derives from the Attorney General's power to appoint officials to detect "crimes against the United States." 28 U.S.C. § 533(1). By regulation, the FBI is empowered to investigate "violations of the laws of the United States." 28 C.F.R. § 0.85(a) (1980). In construing the extent of this power, this Office has issued two memoranda, in addition to that of March 22, 1978, which are relevant.

In a memorandum of November 9, 1977, for the Director of the Federal Bureau of Investigation ("FBI Cooperation with Local Authorities"), we discussed various problems arising in the context of FBI participation in cooperative undercover efforts with local law enforcement authorities. We considered first an investigation initiated in the belief that violations of federal law may be involved, and we concluded that "[a]s long as there remains a legitimate basis for the view that the investigation of the underlying conduct may unearth violations of federal law, we believe that the FBI is authorized to proceed with the investigation." But we further considered the situation where, as the cooperative investigation proceeded, it became clear that the activity in question did not constitute a violation of federal law. We concluded that the FBI could not in such circumstances continue to cooperate with local authorities because "[t]he investigation of violations of state law alone would be beyond the authority conferred on the FBI by 28 U.S.C. § 533(1) and 28 C.F.R. § 0.85." Moreover, incurring expenses other than those necessary for the detection and prosecution of crimes against the United States would result in a violation of 31 U.S.C. § 628, which precludes expenditures except for the purpose for which the

---

[5] A copy of the memorandum, which was in the form of a memorandum to files, was sent to the FBI.

appropriation was made. The only exception that we noted was in the context of an investigation from which the FBI's abrupt withdrawal would result in a significant likelihood of physical harm to other participants. In that case, we indicated that the FBI would be justified in continuing its covert activity to the extent necessary to prevent such harm.

We also had occasion to consider related issues in a memorandum of February 24, 1978, for the Director of the Federal Bureau of Investigation ("Responsibility and Authority of FBI Agents to Respond to Criminal Offenses Outside the Statutory Jurisdiction of the FBI"). That memorandum dealt with the commission of state law offenses in the presence or immediate vicinity of an FBI agent who then acts either on his own accord or in response to a summons by a local law enforcement officer to detain or arrest the offender. We stated at the outset that we thought it "clear that the FBI has no *federal* authority to take action with respect to violations of state law, even in the exigent circumstances . . . present[ed]." Noting that the FBI's statutory jurisdiction in every respect—investigation, execution of search or arrest warrants, and making arrests without warrants—was limited to acts involving violations of the laws of the United States, we concluded that "[a]ny action taken with respect to the violation of state or local law would thus be beyond the FBI's explicit statutory authority." We did find, however, that certain exigent circumstances would give rise to an agent's obligation and power under state law to intervene in state offenses, specifically, if state law designated the agent a peace officer, if the common law authorized a private citizen to act, or if the common law or state statutory law required a bystander to respond to a summons by a local law enforcement officer.

We see nothing in the question of FBI authority that you now raise that would permit a different answer than that which follows from the plain language of § 533(1) itself and from our three prior memoranda.[6]

---

[6] We cannot find congressional approval of the investigations through the device of FBI appropriations following hearings at which Director Hoover referred to the practice. It is true that congressional ratification by subsequent appropriations has been found on occasion, *see Ivanhoe Irrig. Dist.* v. *McCracken,* 357 U.S. 275, 292-94 (1958); *Brooks* v. *Dewar,* 313 U.S. 354, 360-61 (1941); *Sibbach* v. *Wilson & Co.,* 312 U.S. 1, 15-16 (1941); *United States* v. *Midwest Oil Co.,* 236 U.S. 459, 481 (1915). For a number of reasons, however, we find no such ratification here. First, the asserted congressional awareness in this case goes no further than a single committee. Moreover, it is the Appropriations Committee, which has no jurisdiction over FBI activities and whose work is limited, by House and Senate rules, to non-substantive legislation. *See TVA* v. *Hill,* 437 U.S. 153, 189-192 (1978). Second, the unambiguous language of the statute is too plain to admit of a different construction, which is the usefulness of the doctrine of congressional acquiescence. *Jones* v. *Liberty Glass Co.,* 332 U.S. 524, 533-34, (1947); *First Nat. City Bank* v. *United States,* 557 F.2d 1379, 1384 (Ct. Cl. 1977) In these circumstances, we would not be giving effect to a "construction" of the statute; rather, we would be recognizing a repeal (of the limitation on FBI jurisdiction) by implication. *See TVA* v. *Hill, supra; see also SEC* v. *Sloan,* 436 U.S. 103, 121 (1978).

Nor can we find that the agency practice is entitled to the deference that arises in other cases from consistent and longstanding administrative interpretation. Such deference cannot be paid where the practice is inconsistent with or in excess of statutory authority. *E.g., VolksWagenwerk* v. *FMC,* 390 U.S. 261, 272 (1968); Opinion of the Attorney General for the Secretary of Agriculture, June 23, 1980, at 12 [4 Op. O.L.C. 30, 38 (1980)]. *See SEC* v. *Sloan,* 436 U.S. at 117-19.

If there is no reasonable expectation that the investigation will lead to evidence of a violation of federal law—and you specifically pose only the situation where there is none—there is no FBI jurisdiction or authority to investigate. None of the exceptions to this general rule outlined in our prior memoranda is applicable here. First, the authority to begin an investigation cannot be premised on the danger to other law enforcement officials or informers that might result if the FBI were to withdraw from the investigation. Second, the authority under the common law to act upon certain exigencies for crime prevention or apprehension of offenders does not extend to investigations of crimes already committed. Third, state statutory law, although it might conceivably confer investigative authority, could not authorize expenditures that would be incurred in the course of an investigation. The proscriptions of 31 U.S.C. § 628 would still apply.[7]

The Legal Counsel Division's Memorandum appears to suggest that our well-established view of FBI jurisdiction might be different if, as here, the activity was bottomed on a presidential directive. Under 28 U.S.C. § 533(3), the Attorney General may appoint officials "to conduct such other investigations regarding official matters under the control of the Department of Justice and the Department of State as may be directed by the Attorney General." We have previously recognized that pursuant to this section, the FBI could conduct such investigations as were ordered by a presidential directive related to the President's exercise of his constitutional or statutory functions. Memorandum of June 16, 1976, from Assistant Attorney General Scalia, Office of Legal Counsel, to Associate Deputy Attorney General Giuliani ("FBI Authority to Conduct Investigations of Potential Vice-Presidential Nominees").[8] But we see no reason to believe that the purpose of an investigation of a police killing is related to any specific statutory or constitu-

---

[7] We did not address 31 U.S.C. § 628 in our memorandum of February 24, 1978, possibly because an agent's actions in arresting or detaining a state law violator in an emergency situation involve no extraordinary expenses.

[8] The memorandum concluded that no constitutional or statutory authority existed to support a presidential directive to the FBI to investigate possible vice-presidential nominees, and so there was no discussion of how directly related the investigation must be. The memorandum does suggest, however, that more than an indirect relation is required. Although recognizing that the President's general powers to "take care that the laws be faithfully executed," U.S. Const., Art. II, § 3, or his nominating powers, Art. II, § 2, could provide the basis for certain investigations, we nevertheless concluded that neither justification would apply in the case of a vice-presidential nominee; for the President has no responsibility or powers under the Constitution to screen candidates for public office. We further considered the President's need to assure the trustworthiness of a candidate who would receive a national security briefing. But we found no practice of providing such briefing to vice-presidential candidates and, moreover, a "possible constitutional impediment to conditioning the conferral of such a clear benefit in the political campaign, upon agreement to an investigation, particularly when the incumbent President himself is an opposing candidate."

tional power of the President.[9] Thus, this purported investigatory power is not authorized by 28 U.S.C. § 533(3).[10]

## III. Proposals for Legislation

You also asked, in the event that we determined that the FBI lacked the authority to investigate police killings, that we advise whether authorizing legislation can or should be sought. The question whether legislation should be sought is a policy decision. However, if such investigations are to continue, legislation will be required. We see no constitutional infirmity with either of two legislative proposals that have been considered in the past. First, the killing of a police officer could be made a federal crime, as to which the FBI already possesses investigative authority under 28 U.S.C. § 533(1). Second, specific investigative authority for police killings could be added to the FBI jurisdiction conferred under 28 U.S.C. § 533. Such authority could be conditioned upon a request for assistance by a local law enforcement agency, or it could be conferred in all police killing cases. We have no doubt about the sufficiency of the federal interest in local law enforcement to enable Congress to proceed either by amendment to the criminal code or to § 533.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[9] In view of our conclusion that 28 U.S.C. § 533(3) does not apply, we have no occasion to determine what particular action is necessary to invoke the powers under that section. We do note, however, that the directive of November 1, 1970, charged only that the Attorney General should use "all *appropriate* investigative resources" (emphasis added) and did not purport to be an independent basis of investigative authority pursuant to § 533(3). We should add, moreover, that although it is not possible conclusively to determine what was meant in the directive by "appropriate" resources, it does appear that the directive was thought to be the basis for investigations not previously within the FBI's range of operations. That is, we do not believe that the directive was intended only to authorize FBI investigations where "appropriate" under existing statutory authority and agency practice. In light of our conclusion, however, that investigations of non-federal offenses are outside the FBI's jurisdiction, we would now read the directive merely to emphasize that FBI resources may be used in an "appropriate" case, e.g., where there is a reasonable likelihood of uncovering a violation of federal law, and in an "appropriate" manner, e.g., as determined by law enforcement officials in their expertise and in light of all the circumstances.

[10] Moreover, in the absence of any authority under either § 533(1) or § 533(3) for the FBI to act upon a request by a state or local law enforcement official for investigative assistance, the form of the request, whether written or oral, is of course irrelevant.