Argued 16 April, decided 11 June, 1907.

**BORING LUMBER CO. *v.* ROOTS.**

90 Pac. 487.

LOGGING—CONTRACT FOR SALE OF STANDING TIMBER.

1. A contract for the sale of standing timber, indefinite by its terms as to how the timber shall be moved or at what place on the tract, becomes definite by the subsequent acts of the grantee, and the locations so established are as binding as if fixed by the parties originally.

SAME—DAMAGES FOR INTERFERENCE.

2. Where a right, as, for example, to cut and remove standing timber, has become vested at a particular point by the action of the parties, neither the grantor nor any one acting under him can interfere without incurring a liability for damages—and it is not a defense to show that the right of removal might have been exercised equally as well at other points.

RAILROAD—CONTRACT FOR RIGHT OF WAY—RIGHT OF ENTRY.

3. A contract agreeing to convey a right of way within a time specified, with the right to enter on the property described, does not confer an immediate right of entry.

LOGS—CONTRACT—PROOF.

4. A party must prove the allegations or claims on which he relies,

and if rights are conditional, he must prove a compliance with the condition.

A buyer of standing timber under a contract limiting the time for its removal, who relies on an extension of the time for the removal of the same, pursuant to a subsequent contract granting the extension of time on a specified condition, must establish performance of the condition before he can rely on the subsequent contract.

PLEADINGS AND PROOFS IN LAW ACTIONS.

5. Parties litigant should not forget the rule of pleading that proofs must correspond to and be limited by the claims stated in the written pleadings, and rights beyond those thus asserted cannot be granted in law actions.

Where a buyer of standing timber under a contract limiting the time for its removal alleges in his complaint, in an action for the seller's breach of contract, that he was allowed the time specified in the contract for the removal of the timber, without pleading any modification of the contract, he cannot rely on a subsequent contract extending the time for the removal.

LICENSE—DAMAGES FOR INJURY BY TRESPASSER.

6. A licensor is not liable for damages caused the licensee by the unauthorized acts of trespassers.

An owner sold standing timber on his premises, and gave the buyer the right to remove the same within one year. Before the expiration of the year, he agreed to convey to a railroad company a right of way. The contract did not give the company the right to enter on the premises, but the company, before the expiration of the year, did enter on the premises and interfered with the buyer's method of removing the timber. *Held,* that the buyer could not, for the damages sustained, maintain an action against the owner, but his remedy was against the company.

From Multnomah: JOHN B. CLELAND, Judge.

Statement by MR. COMMISSIONER SLATER.

The Boring Junction Lumber Co., as the assignee of O. A. Palmer, sues J. W. Roots to recover damages for breach of a contract made by defendant with Palmer for the sale of saw timber on the N. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of section 1 township 2 S., range 3 E., and on other lands adjacent, all in Clackamas County, with the right to remove the same within one year from June 28, 1902, the date of the contract. The breach alleged is that thereafter, and before April 1, 1903, defendant sold and conveyed a right of way for an electric line and other railroad across the 80 acres above described without making any provision for the removal of the timber thereon to plaintiff's sawmill, and that "the railroad company" entered upon the land and built a railroad on a high embankment without any provisions for the removal of plaintiff's timber to plaintiff's sawmill; that the build-

ing of the road on the right of way, as the defendant authorized
it to do, made it necessary for plaintiff to build, and plaintiff
did built, tunnels under the railroad and through the embank-
ments to enable it to remove its timber to its sawmill. For the
expense of building these tunnels, as well as for the extra ex-
pense of having to take its logs through the tunnels and for
loss of timber, which it was not able by reason of the delay oc-
casioned by the building of the tunnels to take off within the
one year allowed by the contract of sale, plaintiff claims damages.

Defendant answered, denying all of the allegations of the
complaint, except that he admits owning the land described, and
that he made the contract with Palmer for the sale of the tim-
ber. There are also three separate affirmative defenses alleged,
of which the first two need not be mentioned. The third defense
is to the effect that the right of way mentioned was not granted
by defendant until after the time provided in the contract for
the removal of the timber had expired, and that any and all
grants made by him to "the railroad company" were made by
quitclaim deed only, and the purchaser took the same with full
knowledge of and subject to all rights and equities acquired by
said O. A. Palmer or his assigns in and to the lands or timber
by reason of his contract; that plaintiff was damaged, if at all,
by the acts of the railroad company and not by the acts of the
defendant. The reply put in issue all of the material allegations
of the answer.

The cause was tried before the court without a jury, and,
among others, the following findings were made:

"(3)   That on June 28, 1902, the defendant agreed in writing
to sell certain saw timber in the N. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of said
section 1, to one O. A. Palmer for a valuable consideration, which
consideration was afterwards paid. That said contract did not
give a right to remove said timber in any particular direction
nor to any particular place, or mention how or to what place the
timber was to be removed. That, under said contract, said O. A.
Palmer was to begin removing said timber on said portion of
section 1 first, and continue thereon until removal was com-
pleted. Then he was to remove the timber from the other of
said tracts purchased in the order in said contract specified. * *

(5) That defendant did not before April 1, 1903, nor at any time while plaintiff had any rights therein, sell or deed by a proper conveyance a right of way for a railroad across the N. ½ of the N. E. ¼ of said section 1.

(6) That on July 10, 1902, said Roots and said Portland City & Oregon Railway Co. did enter into a written agreement whereby, in consideration of the building of the railway across his lands, defendant was to give them a right of way over said section 1. That such agreement contained no covenants or rights of entry, but only bound defendant on the performance of certain conditions therein expressed within one year from date to give it a deed to a right of way across his lands. That the evidence failed to show that the conditions precedent in said agreement were ever complied with, or that said railroad company was ever entitled to a deed thereunder. * *

(8) That in July, 1903, the Oregon Water Power & Railway Co. got a quitclaim deed to a right of way across defendant's said land, but the same in no way refers to, nor does it appear to be responsive to, the contract to the Portland City & Oregon Railway Co., and is not a copy of the deed there agreed to be made, and is given after the contract right to the timber given to O. A. Palmer on this 80 acres in section 1 had expired. * *

(11) That in March, 1903, the Oregon Water Power & Railway Co., successors to the Portland City & Oregon Railway Co., began building its line across the said land of defendant and found plaintiff in possession thereof, removing the timber and with skidroads across the proposed right of way. * *

(12) That the contract of July 10, 1902, did not give the said railroad company right to enter upon said lands and interfere with plaintiff in removing the timber purchased under the contract of June 28, 1902."

From these the court made, among others, the following conclusions of law:

"(2) The quitclaim deed given to such right of way by J. W. Roots in July, 1903, after plaintiff's right, if any, in said lands had expired, caused no damage to plaintiff.

(3) That the contract of July 10, 1902, between J. W. Roots and the Portland City & Oregon Railway Co., did not give the electric railroad company any superior right to the plaintiff in possession under contract of June 28, 1902, and said company could not oust plaintiff by reason of any authority given it by defendant in said contract.

(4) That plaintiff was damaged, if at all, by its own act in surrendering to one without right or only an inferior one.

(5) That said contract of July 10, 1902, did not authorize said company to interfere with plaintiff in removing the timber under contract of June 28, 1902.

(6) That the said contract of July 10, 1902, gave no right of immediate entry and the entry of the Oregon Water Power & Railway Co., so far as plaintiff was concerned, was a trespass.

(7) That since the contract of June 28, 1902, gave to the purchaser no right to take timber in any particular direction or to any particular place, and there were other equally accessible directions and places open to plaintiff over and to which the timber could have been removed, there was no damage to plaintiff because the road in the direction complained of was not left open."

Plaintiff objected to each of the foregoing findings, except finding No. 11, as contrary to the evidence, and to each of the conclusions of law; but, the court having overruled plaintiff's objections, judgment was entered in favor of defendant, from which plaintiff appeals.                                   AFFIRMED.

.For appellant there was a brief over the name of *Ralph Roloefson Duniway*.

For respondent there was a brief with oral arguments by *Mr. Charles Henry Dye* and *Mr. Harvey Edwin Cross*.

Opinion by MR. COMMISSIONER SLATER.

The correctness of the findings of fact and conclusions of law herein must be determined in the main by the proper legal construction to be placed upon the written contracts of the parties, namely, the contract of June 28, 1902, between defendant and O. A. Palmer for the sale of the timber, and that of July 10, 1902, between defendant and the Portland City & Oregon Railway Co. for a right of way through defendant's premises.

The second and third findings of fact are unquestionably supported by the evidence. It would have relieved the case, however, of much confusion and perplexity, if the written contracts made by the parties had been inserted in full in the findings, leaving the legal effect thereof to be stated in the conclusions of

law. As it is, there is much confusion of matters of fact with conclusions of law. Plaintiff contends that the court should have found that defendant, by his contract of June 28, 1902, gave to Palmer and his successor a license to remove the saw timber to the sawmill on "the land lying east of the center of the county road, and running about north and south through the N. ½ of the N. E. ¼ of section 1, township 2 S., range 3 E.," instead of finding, as it did in the third finding, "that said contract did not give a right to remove said timber in any particular direction nor to any particular place, or mention how or to what place the timber was to be removed." And in connection therewith, plaintiff claims that conclusion of law No. 7 is erroneous. We shall consider them together.

1. It is conceded, however, by plaintiff's attorney in his brief that the contract mentioned does not in express terms grant a license to take the timber off in any particular direction or to any particular place, but he argues that the contract contains no restriction as to where or in what direction the timber is to be removed, and that the parties, by their acts subsequent to the making of the contract, fixed and located the place and direction of removing the timber. This is undoubtedly correct, and the court has by the third finding substantially found that there was no restriction as to where or in what direction the timber was to be removed; and it also found in the eleventh finding that, when the railroad company began building its line across the said land of defendant, it found plaintiff in possession thereof, removing the timber and with skidroads across the proposed right of way. This latter finding, taken in connection with finding No. 3, concedes all that plaintiff can rightfully claim, and is sufficient for the purpose of establishing plaintiff's right as claimed by it to exercise its license at and across defendant's land where the right of way intersected its skidroads. It is not material to what point beyond the right of way plaintiff may have taken his logs. The place of exercising the license granted was not fixed by the contract, but was afterwards determined by the parties, and such location thereof became binding on them the same as if it had been fixed in the contract in the first in-

stance: *Curtis* v. *La Grande Water Co.* 20 Or. 34 (23 Pac. 808, 25 Pac. 378: 10 L. R. A. 484). From this it must necessarily follow that conclusion of law No. 7 is erroneous, and cannot be sustained, for the licensee had built its skidroads and was using them for the purpose expressed in the granted license without objection by the licensor. The right became vested at the point of user.

2. If this right was interfered with during the term of the license by the licensor, or by any one acting under his authority, it is no answer to an action therefor to say that there were other equally accessible directions and places open to plaintiff, over and to which the timber could have been removed, and that there was no damage to the plaintiff because the road was not left open in the direction complained of.

3. Plaintiff's objections to the remaining findings, so far as they may be material to a decision of the case, are covered by the terms of the defendant's so-called contract of July 10, 1902, with the Portland & Oregon Railway Co. This instrument is signed only by the defendant, with two witnesses, and is acknowledged in the same form as a deed. In effect, it purports on its face that, in consideration of $1 paid to him by the Portland City & Oregon Railway Co., and in consideration of the advantages of the location of its line through and upon his land, he agrees with the company at any time within 12 months from that date to execute a deed, the form of which is set out at length in the contract, containing a prospective grant of a right of way across defendant's lands, in consideration of the location of a railway through and upon his lands and the advantages which may accrue to him therefrom. But it is evident by the very words of the contract that none of the terms of the proposed deed were intended to become effective, as granting any rights, until it had been executed. It is not a contract by the defendant saying to the company that "when you locate and build the road on my land, and in consideration thereof, I will execute the following deed," from which language an implied right of entry might be derived; but it is a contract that for the consideration of $1, and the advantage of the location of its line through and

upon his property, the defendant agrees to execute a deed within 12 months, which, by its express terms, is to grant a right of way "with the unrestricted right and privilege to enter upon, locate and construct their railway," etc. This expressly negatives any implied right in the company arising out of this contract to enter upon the land for the purpose of building a railroad prior to the execution of the deed. In this respect the sixth finding is more favorable to plaintiff than the facts justify; but, taken in connection with finding No. 12, the true legal effect of the contract in our judgment is correctly stated.

4. Nor does the record disclose that defendant at any time before June 28, 1903, the date of the expiration of the year in which plaintiff was to remove the timber therefrom, had made any contract or conveyance granting a right of way to any one over the lands in question, so that finding No. 5 must be in accord with the evidence. Plaintiff, however, contends that on December 30, 1902, it was granted by defendant an extension of time, amounting to one year, in which to take off the timber, and the record does contain a writing signed by defendant to that effect, but it is conditional, not absolute. The condition is "in case O. A. Palmer keeps operating the mill at Boring Junction under his contract with F. S. Morris." This is a condition precedent, and there is no evidence in the record that the condition was complied with so as to make the extension effective.

5. A more serious objection, however, to the consideration of this evidence is that plaintiff has alleged in the complaint that he was allowed one year only by the defendant by the contract of June 28, 1902, in which to remove the timber, and it does not plead any modification thereof, so that plaintiff is bound by its pleading to the one year limitation alleged.

6. On July 11, 1903, defendant and his wife, for the expressed consideration of $1, quitclaimed unto the Oregon Water Power & Railway Co., successors to Portland City & Oregon Railway Co., a strip of land 100 feet wide, being 50 feet in width on each side and parallel with the center line of the main track of the railway, as the same was then established and constructed, upon, over and across defendant's land, but the date of the ex-

ecution of this instrument is after the expiration of plaintiff's contract, and when all of its rights thereunder had ceased to exist, and hence the execution thereof by defendant could not in any event have been a violation of his contract with plaintiff. The entry, therefore, in March, 1903, of the Oregon Water Power & Railway Co. upon defendant's land then in the possession of plaintiff under its license, as found by the court, and the building by the railroad company of the embankment complained of, was, as against plaintiff, an unauthorized trespass, for which defendant was not liable; but plaintiff is bound to protect its own rights, and neither party is liable for the infringement of the rights of the other by the acts of a trespasser: 18 Am. & Eng. Enc. Law (2 ed.), 1135.

These legal deductions having been correctly and substantially found and stated by the court in conclusions 1 to 6 inclusive, and disregarding the seventh, which is erroneous, and the eighth and ninth, which are immaterial, the findings are sufficient to support the judgment, which necessarily should be affirmed.                                          Affirmed.

---

Decided 20 August, 1907.