## BROOKS *v.* DEWAR ET AL.

No. 718.   Argued May 1, 1941.—Decided May 26, 1941.

*Mr. Warner W. Gardner,* with whom *Solicitor General Biddle, Assistant Attorney General Littell,* and *Mr. Vernon L. Wilkinson* were on the brief, for petitioner.

*Mr. Milton B. Badt,* with whom *Messrs. William J. Donovan, R. R. Irvine,* and *John Howley* were on the brief, for respondents.

Mr. Justice Roberts delivered the opinion of the Court.

The respondents brought suit in a Nevada District Court to enjoin the petitioner from barring, or threatening to bar, them from grazing their livestock within Nevada Grazing District No. 1 in default of the payment of certain grazing fees and in default of their holding a license permitting such use of the public lands by them. The bill alleged that the respondents were, and for years had been, in the business of breeding, raising, grazing, and selling livestock within Nevada and within the district; that it was impossible for them to own or lease all the land needed for their business and they owned or leased a small portion of the required land and used vacant unappropriated and unreserved public lands of the United States to satisfy the remainder of their grazing requirements; that their financial and business necessities made it impossible to continue to operate if their ability to graze their livestock on the public range were seriously impaired or interfered with. They averred that, until May 31, 1935, they had been impliedly li-

censed by the United States to graze livestock on portions of the public range in Nevada.[1] They recited the passage by Congress of an Act of June 28, 1934,[2] and alleged that, on April 8, 1935, the Secretary of the Interior, in accordance with the provisions of the Act, established a grazing district known as Nevada Grazing District No. 1, which included portions of the public range upon which the respondents had theretofore grazed their livestock and that, on May 31, 1935, the Director of Grazing, with the approval of the Secretary, had promulgated rules which required all persons grazing within the district to obtain temporary licenses so to do, for which no fees were to be paid; that, pursuant to the rules, the respondents obtained temporary licenses; that, on March 2, 1936, after an investigation by the Secretary, the Director of Grazing, with the approval of his superior, purporting to act under the authority of § 2 of the Act of June 28, 1934, promulgated rules for the administration of grazing districts, which provided for the issue of temporary licenses to expire on a date named in 1937 or upon the issue of permits provided for by § 3 of the Act, for which licenses graziers were to pay a fee of five cents per month for each head of cattle and a fee of one cent per month for each head of sheep for the privilege of grazing; that the rules further provided that, after issue of the temporary licenses, no stockman should graze livestock upon, nor drive them across, the public range within a grazing district without a license. The complaint recited that, about May 1, 1936, the respondents were notified by the Register of the District Land Office that licenses would be granted them upon payment of the first installment of the grazing fees, and that

[1] See *Buford* v. *Houtz*, 133 U. S. 320; *Omaechevarria* v. *Idaho*, 246 U. S. 343.

[2] c. 865, 48 Stat. 1269, as amended by Act of June 26, 1936, c. 842, 49 Stat. 1976, 43 U. S. C. Supp. V, § 315 *et seq.*

shortly thereafter the defendant, Brooks, who was acting as Regional Grazier of the United States, notified the respondents that unless they paid the installments and obtained licenses by June 15th they would be considered in trespass under the terms of the Act of 1934 and would be punished by fine as provided in the Act. The respondents alleged with particularity the urgent necessity in the conduct of their business that they be permitted to graze their cattle on public lands and that, unless they can do so, they will suffer irreparable and serious damage due to the destruction of their businesses. The bill charges that although the Secretary in promulgating the rules with respect to temporary licenses purported to act under the authority of § 2 of the Act of 1934, that section confers upon him no power so to do and that grazing fees specified by the rules were fixed without any attempt to determine their amounts as required by § 3 of the Act and in violation of conditions prescribed by § 3.

The petitioner demurred and assigned as reasons that the complaint failed to state facts sufficient to constitute a cause of action against him; that there was a defect of parties defendant for failure to join the Secretary of the Interior; that as the United States, an indispensable party, had not consented to be sued, the court was without jurisdiction; and that the subject matter of the complaint was exclusively within the political power of the United States and not subject to judicial review. The court overruled the demurrer, with leave to answer. The petitioner elected to stand upon his demurrer, and the court thereupon entered a decree in favor of the respondents, which the Supreme Court of Nevada affirmed.[3] We granted certiorari because of the importance of the questions involved.

By § 1 of the Act of 1934, the Secretary of the Interior is authorized to establish grazing districts not exceeding

---

[3] 60 Nev. 219; 106 P. 2d 755.

in the aggregate an area of 80,000,000 acres out of certain unappropriated and unreserved public lands of the United States[4] if the lands, in his opinion, are chiefly valuable for grazing and raising forage crops. Before any district is created a hearing is to be held after notice at which officials and persons interested are to be heard. Section 2 provides:

"The Secretary of the Interior shall make provision for the protection, administration, regulation, and improvement of such grazing districts as· may be created under the.authority of the foregoing section, and he shall make such rules and regulations and establish such service; enter into such cooperative agreements, and do any and all things necessary to accomplish the purposes of ·this Act and to insure the objects of such grazing districts, namely, to regulate their occupancy and use, to preserve the land and its resources from destruction or unnecessary injury, to provide for the orderly use, improvement, and development of the range; . . . and any willful violation of the provisions of this Act or of such rules and regulations thereunder after actual . notice thereof shall be punishable by a fine of not more than $500."

Section 3 authorizes the Secretary to issue permits to graze livestock in grazing districts "upon the payment annually of reasonable fees in each case to be fixed or determined from time to time." It commands that preference be given, in the issue of permits, to certain persons described in the section and that no permittee who complies with the rules and regulations of the Secretary shall be denied the renewal of his permit if such denial will impair the value of the permittee's grazing unit when such unit is pledged as security for any bona fide loan. The permits are to be for a period of not more

---

[4] Increased to an aggregate of 142,000,000 acres by the amendatory Act of June 26, 1936, *supra*, Note 2.

than ten years, subject to the preferential right of the permittee to renewal in the discretion of the Secretary. There are other provisions for adjustment of the amount of grazing to be permitted under the permits, and a corresponding adjustment of the grazing fees in the case of the occurrence of range depletion due to natural causes.

By § 10 it is provided that all moneys received under the authority of the Act are to be deposited in the Treasury of the United States, and twenty-five per cent. of such moneys received from any district in a fiscal year is made available, when appropriated by the Congress, for expenditure by the Secretary for range improvements, and fifty per cent. of such money received from a district in any fiscal year is to be paid, at the end of the year, by the Secretary of the Treasury, to the State in which the grazing district is situated, to be expended by the State for the benefit of the counties in which the district lies.[5]

The petitioner asserts that the judgment below should be reversed because the suit is one against the United States; because the Secretary of the Interior is an indispensable party, and because the state court was without power to enjoin a federal officer. He admits that earlier cases in this Court are against his contention but relies on others which he says sustain his view. As this Court remarked nearly sixty years ago respecting questions of this kind, they "have rarely been free from difficulty" and it is not "an easy matter to reconcile all the decisions of the court in this class of cases."[6] The statement applies with equal force at this day. We are not disposed to attempt a critique of the

---

[5] By § 11 provision is made for disposition of moneys received from districts located on Indian lands. Twenty-five per cent. is made available, when appropriated, for expenditure by the Secretary for range improvement.

[6] Cunningham v. Macon & Brunswick R. Co., 109 U. S. 446, 451.

authorities. Since the jurisdiction and the procedure of the court below are sustained by decisions of this Court, we are unwilling to base our judgment upon a resolution of asserted conflict touching issues of so grave consequence, where, as here, the bill fails to make a case upon the merits.

The respondents say that, under the Act of 1934, the Secretary is powerless to grant temporary licenses and charge fees therefor; that his sole authority is to issue permanent permits for specified periods not to exceed ten years, at fees adjusted to the circumstances of individual permittees, and with preferential rights of renewal. If this view be correct, it might well be years before the Secretary could place the users of lands in any district under permits. The petitioner asserts that it was not the intent of Congress that the grazing lands should go unregulated and without license for any such extensive period as would be required for the issue of permits under § 3. He relies on the broad powers conferred by § 2, and points out that the section is a replica of the statute involved in *United States* v. *Grimaud,* 220 U. S. 506, and there held to authorize similar rules and regulations.

With knowledge that the Department of the Interior was issuing temporary licenses instead of term permits and that uniform fees were being charged and collected for the issue of temporary licenses, Congress repeatedly appropriated twenty-five per cent. of the money thus coming into the Treasury for expenditure by the Secretary in improvements upon the ranges.[7] The information in

---

[7] Act of June 22, 1936, c. 691, 49 Stat. 1757, 1758; Act of August 9, 1937, c. 570, 50 Stat. 564, 565; Act of May 9, 1938, c. 187, 52 Stat. 291, 292; Act of May 10, 1939, c. 119, 53 Stat. 685, 687; Act of June 18, 1940, c. 395, 54 Stat. 406. The form of the Appropriations Act of June 22, 1936, is typical. It is: "For construction, purchase, and maintenance of range improvements within grazing districts, pur-

the possession of Congress was plentiful and from various sources. It knew from the annual reports of the Secretary of the Interior that a system of temporary licensing was in force.[8] The same information was furnished the Appropriations Committee at its hearings.[9] Not only was it disclosed by the annual report of the Department that no permits were issued in 1936, 1937, and 1938, and that permits were issued in only one district in 1939, but it was also disclosed in the hearings that uniform fees were being charged and collected for the issue of temporary licenses. And members from the floor informed the Congress that the temporary licensing system was in force and that as much as $1,000,000 had been or would be collected in fees for such licenses.[10] The repeated appropriations of the proceeds of the fees thus covered, and to be covered, into the Treasury, not only confirms the departmental construction of the statute,[11] but constitutes a ratification of the action of the Secretary as the agent of Congress in the administration of the act.[12]

---

suant to the provisions of sections 10 and 11 of the Act of June 28, 1934 (48 Stat., p. 1269), and not including contributions under section 9 of said Act, $250,000: *Provided,* That expenditures hereunder in any grazing district shall not exceed 25 per centum of all moneys received under the provisions of said Act from such district during the fiscal years 1936 and 1937."

[8] Annual Report Secretary of the Interior 1936, pp. 16–17. *Id.,* 1937, pp. xii, 102, 105–107. *Id.,* 1938, pp. xv, 107.

[9] Hearings Subcommittee of House Committee on Appropriations on H. R. 10,630, 74th Cong., 2d Sess., pp. 13–15; Hearings Subcommittee of House Committee on Appropriations on H. R. 6958, 75th Cong., 1st Sess., pp. 80, 83, 89; Hearings Subcommittee of House Committee on Appropriations on H. R. 9621, 75th Cong., 3d Sess., pp. 65, 70, 71; Hearings Subcommittee of Senate Committee on Appropriations on H. R. 9621, 75th Cong., 3d Sess., pp. 3, 28, 29.

[10] 81 Cong. Rec., part 4, pp. 4570–4571; 83 Cong. Rec., part 11, p. 2376; 84 Cong. Rec., part 13, pp. 2931, 2932, 2933.

[11] *Wells* v. *Nickles,* 104 U. S. 444, 447.

[12] *Isbrandtsen-Moller Co.* v. *United States,* 300 U. S. 139, 147.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*