OMAN et al. v. UNITED STATES.

No. 3923.

United States Court of Appeals
Tenth Circuit.

Dec. 19, 1949.

Milton V. Backman, Salt Lake City, Utah for appellants.

John C. Harrington, Department of Justice, Washington, D. C. (A. Devitt Vanech, Assistant Attorney General, Scott M. Matheson, United States Attorney, Salt Lake City, Utah, and Roger P. Marquis, Department of Justice, Washington, D. C., were with him on the brief), for appellee.

Before PHILLIPS, Chief Judge, MURRAH, Circuit Judge, and RICE, District Judge.

MURRAH, Circuit Judge.

This is an action against the United States brought under the provisions of the Federal Tort Claims Act, as amended, 28 U.S.C.A. §§ 1346(b), 2671–2680, and arising out of the Taylor Grazing Act, as amended, 43 U.S.C.A. §§ 315–315q, and the Federal Range Code for Grazing Districts, 43 C.F.R. Sec. 161.1 et seq., promulgated by the Secretary of the Interior pursuant to the authority vested in him by the Taylor Act.

Plaintiffs' complaint alleges that defendant's employees, in charge of grazing activities on the public domain in the San Rafael District, Utah, wrongfully aided, allowed, and encouraged other livestock operators to utilize the public domain, upon which defendant had previously granted exclusive grazing privileges to plaintiffs (predicated upon plaintiffs' ownership in fee of adjacent private lands).

It further alleges that plaintiffs' predecessors in interest in certain leased lands were granted similar exclusive grazing privileges on public domain adjacent to

such leaseholds, and that when plaintiffs notified defendant's employees of their acquisition of these leaseholds, said employees represented that they would cancel the exclusive privileges granted to plaintiffs' predecessors and would grant such privileges to plaintiffs (as required of them by the Range Code). Contrary to the above representations and in disregard of plaintiffs' rights, defendant's employees failed and refused to cancel the grazing privileges of plaintiffs' predecessors and negligently, wrongfully, and with intent to injure plaintiffs' operations, permitted, aided, and directed plaintiffs' predecessors and others to use said lands.

As a result of these negligent, wrongful, and unlawful acts, plaintiffs allege that they have been obligated to rent extra pasture and purchase extra food; that their livestock has remained in poor condition and losses have been high; that they have been forced into lawsuits, and that the plaintiffs' lands and the public domain in which plaintiffs have exclusive grazing rights have been damaged, all in the amount of $109,000.00.

The District Court sustained the defendant's motion to dismiss the complaint on the grounds that it failed to state a cause of action, and that it was not a claim within the jurisdiction of the court. Plaintiffs have appealed from this ruling.

The Federal Tort Claims Act confers jurisdiction upon the district courts coextensive with the waiver of sovereign tort immunity, and provides that "the district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, for injury or loss of property * * * caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant * * *." 28 U.S.C.A. § 1346(b). However, this "shall not apply to—(a) Any claim * * * based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused. * * * (h) Any claim arising out of * * * misrepresentation, deceit, or interference with contract rights." 28 U.S.C.A. § 2680.

Eliminating the claim arising out of misrepresentation, the tortious acts, if any, bringing this case within the jurisdiction of the federal courts, consist of aiding and encouraging other livestock owners to utilize the grazing lands adjacent to the lands owned in fee, and of aiding and directing similar acts, with intent to injure and destroy plaintiffs' exclusive grazing privileges, coupled with the refusal to cancel plaintiffs' predecessor's permits, on the grazing lands adjacent to the leaseholds.

Such acts are not within the exception to the Tort Claims Act based upon discretionary functions. No government employee is granted the discretion whether he shall induce or incite third persons to interfere with exclusive rights or privileges granted by the United States. It may be that certain of defendant's employees would have had the discretionary authority to take steps to revoke or cancel plaintiffs' exclusive grazing privileges, but no such steps appear to have been taken in this case. Had such steps been taken, the plaintiffs would have been afforded procedural safeguards which apparently were not available to them here.[1] It may also be that the regional grazier had the discretionary authority to refuse to issue grazing permits to transferees of base property,[2] but, if

---

1. See the Federal Range Code, 43 C.F.R. Sec. 161.9(d) (cancellation) and 43 C.F.R. Sec. 161.11(d) (revocation) as to these procedures.

2. See 43 C.F.R. Sec. 161.7(a). "A transfer of base property * * * will entitle the transferee, if otherwise properly qualified, to all or such part of a license or permit as is based on the property transferred, and the original license or permit will be terminated * * *. In any instance in which a transfer * * * of a leasehold interest in land may result in an interference with the stability of livestock operations or with proper range management, such land will lose its de-

so, the transferees were entitled to procedural safeguards which apparently were not afforded them in this case.[3] Moreover, the gist of this aspect of plaintiffs' action is the refusal to cancel the old permits, not the refusal to issue new ones, and as to that, the regional grazier would appear to have no discretion.[4]

 It is suggested that if the alleged acts are non-discretionary, they could not perforce have been committed within the scope of employment. A principal is liable civilly for the tortious acts of his agent which are done within the course and scope of the agent's employment, even though the principal did not authorize, ratify, participate in, or know of such misconduct.[5] But a principal is not liable to third persons for torts committed by his agent acting outside the scope of his employment.[6] If the agent goes outside his employment and acts not in furtherance of the principal's business, but to effect some purpose of his own, the principal is not liable.[7]

 No precise test can be laid down to determine when an act or omission of an agent is or is not within the scope and course of his employment. Generally, it may be said that an agent is acting within the course and scope of his employment when he is engaged in doing for his principal, either the act consciously or specifically directed or any act which can fairly and reasonably be deemed to be an ordinary or natural incident or attribute of that act or a natural, direct, or logical result of it.[8] It is our conclusion that whether or not the agents of the United States, in committing the alleged tortious acts, were acting within the course and scope of their employment should be determined after a full disclosure by evidence of the pertinent facts rather than upon the bare allegations of the pleading.

 The remaining question is whether the acts alleged constituted a redressible wrong for which the United States, if a private citizen, would be liable. All persons who advise, instigate, aid, encourage or direct a wrongful act are as liable as if they had performed the act themselves.[9] Roe v. Lundstrom, 89 Utah 520, 57 P.2d 1128. If, then, plaintiffs' interest in the grazing lands was the sort of interest the courts will protect, the defendant's servants would be legally responsible for encouraging its invasion. The Taylor Act provides that the "issuance of a permit pursuant to

pendency by use or dependence by location * * * upon a finding to that effect by the regional grazier, after reference of the matter to the district advisory board for its recommendation." In view of Red Canyon Sheep Co. v. Ickes, 1938, 69 App.D.C. 27, 98 F.2d 308, it is very questionable whether the regional grazier's authority is discretionary.

3. Ibid.

4. Ibid.

5. Gleason v. Seaboard Air Line R. Co., 278 U.S. 349, 354, 49 S.Ct. 161, 73 L.Ed. 415; Division No. 1, Railway Employees' Dept. of the A. F. of L. v. American State Bank of Omaha, 113 Neb. 196, 202 N.W. 632, 635; West v. F. W. Woolworth Co., 215 N.C. 211, 1 S.E.2d 546.

6. Birmingham News Co. v. Browne, 228 Ala. 395, 153 So. 773, 774; Sweatman v. Linton, 66 Utah 208, 241 P. 309, 310; Firemen's Fund Ins. Co. v. Schreiber, 150 Wis. 42, 135 N.W. 507, 510, 45 L.R.A., N.S., 314, Ann.Cas.1913E, 823; Star Restaurant v. Metropolitan Life Ins. Co.,

105 Vt. 77, 163 A. 558, 559; Silverado S. S. Co. v. Prendergast, 9 Cir., 31 F.2d 225, 226.

7. Firemen's Fund Ins. Co. v. Schreiber, 150 Wis. 42, 135 N.W. 507, 510, 45 L.R. A.,N.S., 314, Ann.Cas.1913E, 823; Division No. 1, Railway Employees' Dept. of the A. F. of L. v. American State Bank of Omaha, 113 Neb. 196, 202 N.W. 632, 635; Larson v. Fidelity Mutual Life Ins. Ass'n, 71 Minn. 101, 73 N.W. 711, 712.

8. Mechem on Agency, 2d Ed., Vol. 2, p. 1461, Sec. 1879; Restatement Agency, Vol. 1, Sections 228, 229, 235; Novick v. Gouldsberry, 9 Cir., 173 F.2d 496; Great Atlantic & Pacific Tea Co. v. Noppenberger, 171 Md. 378, 189 A. 434; Miller v. Teche Lines, Inc., 175 Miss. 351, 167 So. 52, 53.

9. In this case, defendant's servants are alleged to have done more than merely advise or encourage the other livestock owners, since by refusing to cancel the permits of plaintiffs' predecessors, the latter were given color of title.

the provisions of such sections shall not create any right, title, interest, or estate in or to the lands." 43 U.S.C.A. § 315b. In Osborne v. United States, 9 Cir., 145 F.2d 892, 896, it was indicated that grazing permits are only a privilege "withdrawable at any time for any use by the sovereign without the payment of compensation." In the case at bar, however, there was no attempt to revoke, but instead an outright interference with the plaintiffs' grazing rights while their permits remained outstanding and unrevoked. As long as the permits were unrevoked, the grantor would have no more right to interfere with their exercise than would any third party.[10] In fact, by the very terms of the Taylor Act, the grantor (defendant) had not merely a duty to refrain from the invasion of plaintiffs' grazing privileges, but an affirmative obligation to adequately safeguard them.[11]

■ Other courts have held that these permits conferred rights subject to judicial protection. In Arizona, the holder of similar grazing permits was said to be entitled to an action of trespass against encroaching ranchers. Garcia v. Sumrall, 58 Ariz. 526, 121 P.2d 640. Even the opinion in the Osborne case, supra, implied that these permits would be "highly valuable as between private persons".[12] The courts of

Utah have not passed on this question, but analogous cases indicate that they would grant relief.[13] In the Red Canyon Sheep Co. case, 98 F.2d 308, it was held that, whatever the rights accruing under the permits be denominated, they were entitled to equitable protection. No reason is apparent why similar protection should not be afforded in an action at law for damages.

■ We conclude that plaintiffs have stated a cause of action against the United States within the jurisdiction of the District Court for acts done with respect to lands upon which plaintiffs had grazing permits. They have further stated that they were entitled to grazing permits upon the lands as to which they were transferees. This involves a legal conclusion which we need not now resolve, but it appears that plaintiffs' rights are akin to the rights of the plaintiff in the Red Canyon Sheep Co. case in that they will "in the ordinary course of administration * * * ripen into a permit".[14] Such rights, be they legal or equitable, are entitled to protection and as to such lands plaintiffs have also stated a cause of action within the jurisdiction of the District Court.

The judgment is reversed.

10. Even a bare licensee may maintain an action for damages against a licensor who interferes with his rights. Boring Lumber Co. v. Roots, 1907, 49 Or. 569, 90 P. 487.

11. "So far as consistent with the purposes and provisions of said sections, grazing privileges recognized and acknowledged shall be adequately safe-guarded * * *." 43 U.S.C.A. § 315b. See also Red Canyon Sheep Co. v. Ickes, 1938, 69 App.D. C. 27, 98 F.2d 308; and Code of Federal Regulations, Title 43, Section 501.22 to 501.25, inclusive, relative to duties to enforce the provisions of the Federal Range Code and prevent trespasses and unlawful occupancy.

12. See footnote 5 of the Osborne case, supra, "Numerous instances are to be found where permits issued by a sovereign are highly valuable as between private persons but which may be revoked

by the sovereign without the payment of compensation".

13. The Supreme Court of Utah has stated, "One may be the lessee or otherwise have cattle or other personal property upon the land of another so long as he is lawfully there, and if another unlawfully causes damage to the personal property he may not escape upon the position that another owns the ground." Harris v. I. K. Products Co., 1942, 102 Utah 489, 132 P.2d 375. In Utah there is a statute which gives the "owner or the occupant" of premises an action against the owner of trespassing animals (in the absence of local fencing statutes). Utah Code Ann.1943, 3—5—79. "Occupant" has been very liberally construed. Peterson v. Petterson, 1911, 39 Utah 354, 117 P. 70.

14. 1938, 98 F.2d 308, 316.