**Wade McNEIL, Appellant,**

v.

**Fred A. SEATON, individually and as Secretary of the Interior, Appellee.**

**No. 15351.**

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 23, 1960.

Decided June 16, 1960.

Petition for Rehearing Denied Sept. 22, 1960.

---

Mr. Leif Erickson, of the bar of the Supreme Court of Montana, Helena, Mont., pro hac vice, by special leave of court, with whom Mr. Ellis Lyons, Washington, D. C., was on the brief, for appellant.

Mr. Hugh Nugent, Atty., Dept. of Justice, of the bar of the Supreme Court of Missouri, pro hac vice, by special leave of court, with whom Mr. Roger P. Marquis, Atty., Dept. of Justice, was on the brief, for appellee.

Mr. Claron C. Spencer, Atty., Dept. of Justice, also entered an appearance for appellee.

Before Mr. Justice BURTON, retired,* and WILBUR K. MILLER and DANAHER, Circuit Judges.

DANAHER, Circuit Judge.

This case involves appellant's claim that he has wrongfully been denied

* Sitting by designation pursuant to 28 U.S.C. § 294(a).

rights accruing to him under the Taylor Grazing Act [1] and the Federal Range Code.[2] The Secretary on June 19, 1956 promulgated a Special Rule [3] the effect of which was to reduce appellant's claimed preferential grazing privileges on the federal range and to permit grazing by other users allegedly not entitled to grazing preferences. Cross motions for summary judgment were considered by the District Court where judgment was entered for the Secretary and appellant's complaint was dismissed. Basically this appeal presents only an issue as to the validity of the Special Rule.

The Secretary's motion in the District Court, in part, asked judgment on the ground that "The United States, a sovereign not amenable to suit, is an indispensable party defendant." The point was not pressed as the District Judge noted, and properly, we think.[4] Here the Secretary was named and appeared,[5] and we have held that rights acquired under the Taylor Grazing Act may be protected against unlawful action by the Secretary.[6] We think the case is properly here.

The Secretary established Montana Grazing District No. 1 on July 11, 1935, as by section 1 of the Act he was authorized to do after notice and hearing.[7] He issued the Federal Range Code pursuant to section 2 of the Act which "seeks to provide the most beneficial use of the public range and *to protect grazing rights* in the districts it creates. Chournos v. United States, 193 F.2d 321." [8] (Emphasis added.) The Act in section 3 provided that the Secretary is authorized to issue grazing permits "to such bona fide settlers, residents, and other stock owners as under his rules and regulations are entitled to participate in the use of the range * * *. Preference shall be given in the issuance of grazing permits to those within or near a district who are landowners engaged in the livestock business, bona fide occupants or settlers, or owners of water or water rights, as may be necessary to permit the proper use of lands, water or water rights owned, occupied, or leased by them * * *." [9] This appellant qualified for the "preference" specified in the Act, for he had been continuously engaged in the livestock business in the area in question since 1925 and was so engaged over the five years prior to the date the Act was passed.

Moreover, section 3 proceeds, grazing permits were to run for a period of ten years, "subject to the preference right of the permittees to renewal in the discretion of the Secretary of the Interior, who shall specify from time to time numbers of stock and seasons of use." The same section recognized that a grazing unit without a grazing permit might suffer loss of value.

1. Act of June 28, 1934, 48 Stat. 1269, 43 U.S.C.A. §§ 315–315r.

2. 19 Fed.Reg. 8954 (1954) (now appearing as amended in 43 C.F.R. §§ 161.1–.19 (Supp.1959)).

3. 21 Fed.Reg. 4292 (1956), 43 C.F.R. § 161.2(k) (3) (iii) (Supp.1959). And see 43 C.F.R. § 161.16 (Supp.1959).

4. Cf. Brooks v. Dewar, 1941, 313 U.S. 354, 359, 360, 61 S.Ct. 979, 85 L.Ed. 1399; West Coast Exploration Co. v. McKay, 93 U.S.App.D.C. 307, 213 F.2d 582, certiorari denied, 1954, 347 U.S. 989, 74 S.Ct. 850, 98 L.Ed. 1123.

5. That the *Secretary* has been regarded as the "indispensable party," see Richman v. Beck, 10 Cir., 1958, 257 F.2d 575, 579; Sellas v. Kirk, 9 Cir., 1952, 200 F.2d 217, certiorari denied, 1953, 345 U.S. 940, 73 S.Ct. 831, 97 L.Ed. 1366; Bedke v. Quinn, D.C.D.Idaho 1957, 154 F.Supp. 370.

6. Red Canyon Sheep Co. v. Ickes, 1938, 69 App.D.C. 27, 98 F.2d 308.

7. Brooks v. Dewar, supra note 4, 313 U.S. at page 358, 61 S.Ct. at page 981.

8. Hatahley v. United States, 1956, 351 U.S. 173, 177, 76 S.Ct. 745, 750, 100 L. Ed. 1065; and see cases cited in notes 5 and 6 supra.

9. Congress specified that no such preference was to be accorded until July 1, 1935 to any person whose rights were acquired between January 1, 1934 and December 31, 1934. "Newcomers" claiming status acquired within the period named thus were precluded from permit preference.

We have heretofore noted, as does the statute, that those qualifying under the Act definitely acquired "rights," although we did not define them by category. "Yet, whether they be called rights, privileges, or bare licenses, or by whatever name, while they exist *they are something of real value * * * which have their source in an enactment of the Congress.*"[10] (Emphasis added.)

We were not alone in recognizing in the Red Canyon case that the Act conferred rights upon a permittee who came within its terms. In the Tenth Circuit whose judges are thoroughly familiar with the problems of the range, it has been observed that the Secretary has "not merely a duty to refrain from the invasion of [permittees'] grazing privileges, but an affirmative obligation to adequately safeguard them."[11]

It is reasonable to conclude that the Secretary himself took a similar view of his duty. The Range Code issued agreeably to the statute, provided specifically that "Preference in the granting of grazing privileges will be given to those applicants within or near a district who are landowners engaged in the livestock business, bona fide occupants or settlers, or owners of water or water rights * * owned, occupied, or leased by them."[12] The Range Code defined "Base property,"

"Forage land" and "Land dependent by use."[13]

The latter is said to be forage land of "such character that the conduct of an economic livestock operation requires the use of the Federal range in connection with it and which, in the 5-year period immediately preceding June 28, 1934 (referred to in this part as the 'priority period'), was used as a part of an established, permanent, and continuing livestock operation for any two consecutive years or for any three years in connection with substantially the same part of the public domain, now part of the Federal range * * *."[14]

It is clear that a permittee *as against the United States* may acquire no "right, title, interest, or estate in or *to the lands*" (emphasis added) as section 3 provides,[15] and the Government for its own use may without payment of compensation withdraw the permit privilege.[16] Otherwise, consistently with the purposes and provisions of the Act, "grazing privileges recognized and acknowledged shall be adequately safeguarded."[17] It would seem beyond peradventure that when the Secretary in 1935 created Montana Grazing District No. 1 which included lands upon which this appellant then was grazing, he and others similarly situated "who have been grazing their livestock upon these lands

10. Red Canyon Sheep Co. v. Ickes, supra note 6, 69 App.D.C. at page 34, 98 F.2d at page 315.

11. Oman v. United States, 10 Cir., 1949, 179 F.2d 738, 742.

12. 43 C.F.R. § 161.1(b) (Supp.1959). Compare § 3 of the Act.

13. 43 C.F.R. § 161.2(e), (f) and (g) (1954); classification of base property was provided for in § 161.4.

14. 43 C.F.R. § 161.2(g) (1954). 43 C.F.R. § 161.2(k) (1) (Supp.1959) reads:
" 'Land dependent by use' means forage land other than Federal range of such character that the conduct of an economic livestock operation requires the use of the Federal range in connection with it and which, in the 'priority period', was used as a part of an established, permanent, and continuing livestock operation for any two consecutive years or for any three years of such priority period in connection with substantially the same part of the public domain, now part of the Federal range. The priority period shall be the five-year period immediately preceding June 28, 1934 * * *."
As to an area placed within a grazing district after June 28, 1938, or added to an existing grazing district thereafter, a different priority period was prescribed.

15. Compare Osborne v. United States, 9 Cir., 1944, 145 F.2d 892, 895.

16. United States v. Cox, 10 Cir., 190 F. 2d 293, certiorari denied, 1951, 342 U.S. 867, 72 S.Ct. 107, 96 L.Ed. 652.

17. 43 U.S.C.A. § 315b; and see Oman v. United States, supra note 11, 179 F.2d at page 742.

and who bring themselves within a preferred class set up by the statute and regulations, are entitled as of right to permits as against others who do not possess the same facilities for economic and beneficial use of the range." [18]

■ What particular *number* of stock a preference applicant might be entitled to graze must depend upon circumstances, having in mind the orderly use of the public lands, the possibility of overgrazing, the forage capacity of the base property, available water and other factors pertinent to such a complicated administrative problem.[19] Subject to such considerations and others specified in the Code, the extent of the appellant's grazing privileges was to be determined.

■ Thus stood appellant's status as of April 9, 1936, when the Secretary, pursuant to section 2 of the Act, entered into a cooperative agreement by which he licensed the South Phillips Cooperative State Grazing District to administer the Federal range lands in Montana District No. 1. Twenty years later, on June 19, 1956, through his delegated representative, he promulgated a Special Rule [20] for part of Montana District No. 1. He relied upon a special rule-making provision of the Range Code,[21] reciting that he acted upon the recommendation of the Advisory Board of the Malta Grazing District (Montana No. 1) and that a factual showing of necessity had been made by the State Supervisor concurred in by the Area Administrator for the purpose of "classifying and determining the dependency by use of base properties utilizing certain Federal range in Montana Grazing District No. 1. These Federal range lands were formerly administered by Montana Cooperative State Grazing Districts under an agreement with the Bureau of Land Management, and are now being administered directly by the Bureau."

Affected particularly were lands involved in this controversy. The Special Rule revised or supplied definitions of terms basic to the administration both of the Act and the Range Code. To illustrate, the Secretary changed the "priority period" from the 5-year period immediately preceding June 28, 1934, to a 5-year period "immediately preceding January 1, 1953";[22] use of the Federal range as part of an established livestock operation was required "during each year of such priority period in connection with such Federal range." Base lands were to be considered as "dependent by use" (Class 1) "only where and to the extent that during each year of such priority period licenses for use of the Federal range in connection therewith were issued under the rules and regulations of the Montana Cooperative State Grazing Districts." Grazing privileges to be granted under the Special Rule were not to exceed the lesser of the amounts to be determined pursuant to the amended definitions. We need not detail other differences, the particulars of which may be noted by comparison of the referenced provisions. It is enough for our purposes to note that the status of this appellant as a preference applicant was no longer that which had been accorded to him by the Act and the Range Code prior to the Special Rule. Moreover, newcomers to livestock operations in the area during the amended priority period, 1948–1952, were to be given grazing privileges as to base lands "dependent by use" to the extent that they had been licensed during "such priority period"

---

18. Red Canyon Sheep Co. v. Ickes, 69 App. D.C. at page 33, 98 F.2d at page 314.

19. By 1941 the Grazing Service had the responsibility of administering the Act in connection with 142,000,000 acres of federally owned lands, located in 10 Western states, divided into 56 grazing districts. Some 20,000 permits were involved. Testimony of R. H. Rutledge, Director of Grazing Service. Hearings Before a Subcommittee of the Senate Committee on the Judiciary, 77th Cong., 1st Sess., pt. 2, at 704 (1941).

20. Supra note 3.

21. 43 C.F.R. § 161.16 (Supp. 1959).

22. Compare note 14 supra.

under the administration of the State Co-operatives.[23]

Appellant insists that not only has he not been accorded the rights to which he had become entitled as a matter of law, but that grazing privileges which should rightfully be his have been awarded to others who cannot qualify. He asks us to strike down the Special Rule on the ground, among others, that the rule was issued without notice and hearing. We do not agree with appellant on that proposition.

The Taylor Grazing Act provides for the organization of a Board of Grazing District Advisors. It then provides: "Except in a case where in the judgment of the Secretary an emergency shall exist, the Secretary shall request the advice of the advisory board in advance of the promulgation of any rules and regulations affecting the district." [24] The Secretary seems to have followed that requirement, as the previously quoted recital from the preamble to the Special Rule discloses. Morever, the regulations comprising the Range Code were authorized by sections 2 and 3 of the Act. Therein lies the genesis of the authority for the issuance of Special Rules.[25] Again, the notice requirements of section 4 of the Administrative Procedure Act [26] contain an express exception when there is involved rule making relating "to public property, loans, grants, benefits, or contracts." That we are here dealing with matter relating to public property is obvious. Although the Taylor Act in certain other respects provides for public notice and hearing, there is no such requirement as to regulations or rule-making concerning the issuance of grazing permits or a special rule touching problems with respect thereto.[27]

Appellant prays that we order the Secretary to issue a Class One permit for the grazing of 282 animal units and a Class Two permit to graze 157 animal units on the Federal range. We have no such authority.

He has asked that the Special Rule "be vacated, annulled and set aside" as void and of no effect. We decline to do so except as applied to him and in respects we shall mention. The Special Rule otherwise may be entirely proper as to parties not before us, or as to its general applicability respecting situations not shown on this record. We express no opinion on such aspects.

We say this much: this appellant clearly was entitled to "preference" under the Act and the Range Code, as we have shown. The word in the context here used is to be taken in its ordinary sense. Its meaning is plain. It is a term with which Congress is fully familiar as in legislation dealing with immigration,[28] preference in employment,[29] Indian land allotments [30] and many other fields.

---

23. The Secretary on November 19, 1957, acting by his Solicitor denied administrative relief to this appellant. In his opinion he observed that the South Phillips Cooperative had awarded range privileges "not in accordance with the requirements of the Federal Range Code." The Government in its brief tells us that "The award of privileges for 1953 was an attempt by the Bureau to allow privileges in accord with the Taylor Grazing Act and the Federal Range Code without unduly upsetting recognized range operations." The brief does not explain how permits issued by the cooperative during a period of mismanagement become criteria with respect to the issuance of permits for the year 1953 and succeeding years.

24. 43 U.S.C.A. § 315o–1.

25. 43 C.F.R. § 161.16 (Supp.1959).

26. 60 Stat. 238 (1946), 5 U.S.C.A. § 1003.

27. And see Administrative Procedure Act, Legislative History, S.Doc. No. 248, 79th Cong., 2d Sess. 257 (1946).

28. Commissioner of Immigration of Port of New York v. Gottlieb, 1924, 265 U.S. 310, 44 S.Ct. 528, 68 L.Ed. 1031.

29. Hilton v. Sullivan, 1948, 334 U.S. 323, 68 S.Ct. 1020, 92 L.Ed. 1416.

30. Harnage v. Martin, 1917, 242 U.S. 386, 37 S.Ct. 148, 61 L.Ed. 382.

So here. "Preference *shall be given*" to those like appellant who come within the Act. This appellant not only was engaged in stockraising when the Act was passed, but he qualified under the Range Code as and when first promulgated. He was entitled to rely upon the preference Congress had given him: to use the public range as dedicated to a special purpose in aid of Congressional policy. We deem his rights—whatever their exact nature [31]—to have been "protected against tortious invasion" [32] and to have been "founded on a statute which confers a privilege." [33] Accordingly this appellant was entitled to invest his time, effort and capital and to develop his stockraising business, all subject, of course, to similar preferences to be accorded in the affected area to others comparably situated. We see no basis upon which, by a special rule adopted more than twenty years after appellant had embarked upon his venture, he may lawfully be deprived of his statutory privilege.

To the extent that the Special Rule is repugnant to the Act and to the Range Code prior to 1956, if and as applied *to this appellant* to deprive him of his rights and to award others grazing privileges in derogation of appellant's preference status, it is void. We expect that if appellant should again apply for a grazing permit, his application will be processed in a manner not inconsistent with this opinion, but otherwise within the provisions of the Range Code.

The judgment of the District Court dismissing appellant's complaint will be reversed, but our order will not be en-

tered for the time being. Within ten days from the date of this opinion the parties may submit their respective versions of the form they deem the final judgment should take.[34]

Reversed.

Mr. Justice BURTON, concurring in part and dissenting in part: Insofar as the opinion of the Court sustains the validity of the special rule, I concur. I would go further and affirm the judgment of the District Court dismissing the complaint.

The authority of the Secretary of the Interior to make rules and regulations consistent with the Taylor Grazing Act is amply established in §§ 2 and 3 of the Act. 48 Stat. 1270–1271, 43 U.S.C.A. §§ 315a and 315b. The Federal Range Code promulgated by the Secretary is an exercise of that authority. It expressly provides for the adoption of special rules for grazing districts where local conditions make them necessary "in order better to achieve an administration consistent with the purposes of the act * *." 43 CFR, 1959 Cum.Pocket Supp., § 161.-16.

The special rule now before us was adopted in complete conformity with the procedure prescribed in the Code. It applies only to specifically described lands, including those in use by appellant, and it changes the basic period, by which it measures the prior use of lands, from the five-year period immediately preceding June 28, 1934 (43 CFR, 1959 Cum.Pocket Supp., § 161.2(k) (1)), to the five-year period immediately preced-

---

31. See Red Canyon Sheep Co. v. Ickes, supra note 10; Oman v. United States, supra note 11.

32. Tennessee Electric Power Co. v. T.V. A., 1939, 306 U.S. 118, 137, 59 S.Ct. 366, 369, 83 L.Ed. 543 and Hatahley v. United States, supra note 8.

33. Tennessee Electric Power Co. v. T.V.A., supra note 32, 306 U.S. at pages 137–138, 59 S.Ct. at page 369; cf. Stark v. Wickard, 1944, 321 U.S. 288, 309, 64 S.Ct. 559, 88 L.Ed. 733 and Burfenning

v. Chicago, St. Paul Ry., 1896, 163 U.S. 321, 323, 16 S.Ct. 1018, 41 L.Ed. 175.

34. The Secretary on brief has noted that if we are constrained to reverse "the only proper procedure would be to remand the matter to the Department of the Interior so that the relative rights of appellant and of all the other users of grazing land in the district could be determined under the procedure of the Range Code, including the Advisory Board's recommendation."

.ing January 1, 1953 (43 CFR, 1959 Cum. Pocket Supp., Note, § 161.2(k)). This procedure provides a way to dispose of the many different kinds of problems the Range Code was established to solve. The rule does not deprive appellant of any vested right, nor is it beyond the scope of the Secretary's rule-making power. It merely provides, in the interest of all concerned, a reasonable regulation of individual rights to the use of public land.

Neither the record nor the majority opinion provides an adequate basis for appellant's claim that the Range Code, by establishing the 1929-1934 priority period, has established in effect a permanent right to use the public range exempt from any modification of those rights even by the rule-making authority by which they were established. The Taylor Grazing Act did not purport to establish a specific and inflexible test as the basis for the preference. Rather, it was a starting point announcing a congressional policy as to the use of the federal range, and delegating authority to the Secretary to make and modify general or special rules for carrying out that policy. If the expectations of appellant were thus aroused, they were aroused not by the statute, but by the Range Code's amendable definition of "dependency by use" in terms of a specific priority period.

The present record does not establish the precise amount of appellant's preference under the special rule and we cannot properly consider the application of the special rule to appellant until he has been assigned a preference under it and grazing privileges are allotted or denied to him by virtue of it. The record does not show that the application to him of the special rule will result in sufficient prejudice to him to qualify him to attack it.[1]

---

[1] The findings of the examiner in the administrative hearing, founded on substantial evidence, indicate that, based on the 1929-1934 preference period, McNeil has a Class I preference of 90 animal units, while based on the contested 1948-1952 base period, the testimony in the record indicates he has a Class I preference of more than twice that number of animal units.