**Don Irving PORTER, Executor of the Estate of John Prather, Deceased, Appellant,**

v.

**Honorable Stanley R. RESOR, Secretary of the Department of the Army, Appellee.**

No. 72-68.

United States Court of Appeals Tenth Circuit.

Aug. 13, 1969.

Thomas F. McKenna, of McKenna, Sommer & Lawler, Santa Fe, N. M., for appellant.

Frank B. Friedman, Dept. of Justice, Washington, D. C. (Glen E. Taylor, Acting Asst. Atty. Gen., John Quinn, U. S. Atty., Ruth C. Streeter, Asst. U. S. Atty., S. Billingsley Hill, and Robert S. Lynch, Attys., Dept. of Justice, with him on the brief), for appellee.

Before BREITENSTEIN, SETH and HICKEY, Circuit Judges.

PER CURIAM.

This action was commenced in the United States District Court for the District of New Mexico following an administrative decision by the Secretary of the Department of the Army that the appellant executor was not entitled to compensation under the Taylor Grazing Act (43 U.S.C. § 315q) for a reduction in the decedent's grazing permit caused by the Army's taking of some of the public domain covered by the permit.

The record shows that the number of permitted livestock in decedent's Taylor Grazing Act permit was substantially reduced when a large area of public domain was turned over to the use of the Army. Thus after July 1957 the decedent, Mr.

Prather, had no permit or allotment to graze his stock in the area taken.

Apparently some time theretofore condemnation proceedings had been commenced whereby some or all of the decedent's fee land and state leases were taken together with some mineral interests. This condemnation award was determined by the United States District Court in 1959 in the amount of about $105,000.00, but the decedent refused to take down the compensation so awarded.

Other Taylor Act permittees in the area made claims under the Taylor Act for compensation for termination of their grazing permits on lands taken by the Army, and awards were made therefor. The decedent however chose not to make such a claim, and instead continued to use the withdrawn lands for grazing just as he had done before the taking. The Army did not evict decedent from the ranch nor remove his stock from the grazing land although they could have done so. This use by the decedent was not the result of any agreement with the Army or anyone else. It was an extra-legal, undefined, unconsented to use of the public domain. The decedent just continued about his business as before and the Army did not prevent him from so doing. The Army also had the use of the same land by virtue of the taking. It was a standoff between them. Mr. Prather obviously intended that it continue indefinitely; he was taking no steps to secure an award for the taking of any of his interests.

This condition continued for some eight years until the death of Mr. Prather in February 1965. Upon his death his estate then discontinued use of the ranch, removed the livestock, took down the court's condemnation award for the state leases and fee land, and then filed this claim with the Secretary of the Army under 43 U.S.C. § 315q for the reduction in the decedent's Taylor Grazing Act permit made some eight or nine years before. The Secretary denied relief.

The Secretary of the Army in the denial of compensation stated that neither Mr. Prather nor his estate had "any claim" for the loss of the Taylor Act lands, since in the years following the taking the decedent was not deprived of the lands but "continued occupancy without payment of fees or rental." The Secretary's memorandum also said: "In the absence of any loss of use, hardship, equitable entitlement or damage, Mr. Prather is not entitled to compensation under the Act."

The trial court granted the Secretary's motion for summary judgment, and denied the appellant's similar motion. We must affirm the trial court.

As described above, the decedent made no claim for compensation for the reduction in his permit as he could have done under 43 U.S.C. § 315q, had he given up use of the land. He was not required to make such a claim, and he chose not to do so. Instead he ignored the taking entirely and continued his ranch operations as before. As far as he was concerned this unilateral arrangement was apparently to continue indefinitely, and it did so continue until his death. This indefinite period was permanent in the sense that it was his alternative to asking for compensation for the "permanent" taking or cancellation of a portion of his permit. This was an election on his part to take that course indefinitely, and it was clear, effective, and of such duration that his estate cannot now take a different position, but is instead bound by the decedent's decision.

The estate in the arguments and brief seeks to place itself in the position of a new entity making a new decision on the matter unrelated to what had gone on before. This they cannot do as they under these circumstances must stand in the shoes of the decedent. The estate cannot at this late date make a claim for the decedent's permanent loss of the permitted number of stock by now concurring in the taking, removing the stock, and saying it now suffered a loss. The value of the use for the eight years by the decedent may not equal what would

have been received if a claim for compensation had been made, but this was the chance the decedent took on the length of his life and his ability to continue when he reached his decision as to what to do.

The estate, as to the lapse of time, argues that no losses were suffered until the estate vacated the land in 1965, and it was then entitled to compensation for the "permanent" loss of the permit. But again it is clear that the estate did not suffer the loss of the permit. Under the statute the decedent's permit was reduced and he decided to pursue a course of action other than that contemplated by 43 U.S.C. § 315q. This was thus not a period of inaction on decedent's part but one of action in another direction. Any right as his representative to relief under the statute never existed.

This Act was a remedial one to prevent hardship to ranchers whose Taylor Act lands were taken for national defense purposes. 1948 U.S.Code Cong. & Ad. News, p. 1614. See also United States v. Cox, 190 F.2d 293 (10th Cir.); Osborne v. United States, 145 F.2d 892 (9th Cir.); McDonald v. McDonald, 61 N.M. 458, 302 P.2d 726. The nature of the Taylor permits has been considered by many courts and need not be reviewed here. See Oman v. United States, 179 F.2d 738 (10th Cir.); Hinton v. Udall, 124 U.S.App.D.C. 283, 364 F.2d 676. It is sufficient to say that the compensation statute was passed in recognition of the actual losses that were being suffered through the withdrawal of public domain for defense and similar purposes. Resort to such an Act is obviously discretionary with the persons for whom it was intended to grant relief. The self-reliant Mr. Prather decided he did not need this relief; he did not seek it; and instead he had his own homemade remedy which was effective and satisfactory to him for his remaining years. The executor acquired no claim, the Secretary so decided, as did the trial court.

Affirmed.