Maliha AZIZ, et al., Plaintiffs,

v.

Louis W. SULLIVAN, Secretary of Health and Human Services; and Larry Jackson, Comm'r of Va. Dept. of Social Services, Defendants.

Maliha AZIZ, Plaintiff,

v.

Edward MADIGAN, Secretary, United States Dept. of Agriculture; and Larry Jackson, Comm'r of Va. Dept. of Social Services, Defendants.

Civ. A. Nos. 91–1912–A, 91–1913.

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 10, 1992.

Richard Peyton Whiteley, Legal Services of Northern Virginia, Arlington, Va., for plaintiffs.

Mary Sue Terry, Atty. Gen., Richmond, Va., Theresa Carroll Buchanan, Asst. U.S. Atty., Alexandria, Va., Gaye Lynn Taxey, Asst. Atty. Gen., Fairfax, Va., for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

### Introduction

This case raises an important question, novel in this circuit, concerning resident alien eligibility for certain welfare benefits. At issue specifically is the correct interpretation of the phrase "entry into the United States" in two nearly identical statutory provisions, one in the Social Security Act, 42 U.S.C. § 615(a) (1991), and the other in the Food Stamp Act, 7 U.S.C. § 2014(i)(1) (1988). Both provisions, commonly known as the "sponsor-to-alien income deeming provisions", restrict a permanent resident alien's eligibility for benefits under the Aid to Families with Dependent Children ("AFDC") and Food Stamp programs, re-

spectively, by deeming the income and resources of the alien's sponsor available to the alien for three years following the permanent resident alien's "entry into the United States." 42 U.S.C. § 615(a); 7 U.S.C. § 2014(i)(1). The phrase "entry into the United States" is not defined in either statute. But regulations promulgated under the authority of defendant Secretary Sullivan, administrator of the AFDC program, and defendant Secretary Madigan, administrator of the Food Stamp program, do define this phrase as the date upon which the Immigration and Naturalization Service ("INS") approves the alien for "permanent residence" in the United States. *See* 45 C.F.R. § 233.51(a), (b) (1991); 7 C.F.R. § 273.11(j)(1), (2) (1992). Relying on this regulatory definition, defendants denied AFDC and Food Stamp benefits to plaintiff, Maliha Aziz ("Aziz"), a permanent resident alien. Aziz argues that the regulations are invalid as unfaithful to the plain meaning of the statutes. Accordingly, Aziz seeks declaratory and injunctive relief to invalidate the regulatory definitions of the statutory phrase "entry into the United States" in the AFDC and Food Stamp sponsor-to-alien income deeming provisions.

Given that the matter is before the Court on cross-motions for summary judgment[1] and because no material facts are disputed, this cause is ripe for summary disposition. For the reasons set forth below, the Court concludes that the phrase "entry into the United States", when read in the context of each statute as a whole, is not unambiguous and that the consistent regulatory interpretations of this statutory phrase are permissible, and hence valid and entitled to deference here.

1. Defendant Larry Jackson, Commissioner of the Virginia Department of Social Services ("DSS"), also filed a motion for summary judgment, asking that he be dismissed from the suit. Given the Court's ruling on the federal defendants' motion for summary judgment, defendant Jackson's motion is moot.

2. Aziz's husband disappeared during this conflict and his current status is unknown.

3. Sponsors are required when circumstances suggest that an alien seeking permanent resi-

*Facts*

Aziz, a native of Afghanistan, first arrived in the United States in 1980 to receive medical treatment. While here, she gave birth to her older son, Eleas, who is a United States citizen. After completion of her medical treatment, Aziz and Eleas returned to Afghanistan. Following the loss of her husband during an armed conflict in that country,[2] she came back to the United States with Eleas and her younger son, Sohail, who was born outside this country. Upon returning to the United States, Aziz applied to the INS for political asylum for herself and Sohail. Two years later, Aziz changed her application to one for permanent residence. As part of this application, Aziz' brother, Khairuddin Fakhri ("Fakhri"), a permanent resident of the United States, filed an Affidavit of Sponsorship with the INS in which he promised to assist Aziz and Sohail for three years after their entry into the United States to ensure that they would not become public charges during that time.[3] The affidavit was dated June 15, 1987. On September 1, 1989, the INS approved Aziz and Sohail for permanent resident status. Having attained that status and being in need of assistance, Aziz applied for, and began receiving, Food Stamp and AFDC benefits from the Fairfax County Department of Human Development in June 1990. Shortly thereafter, Aziz received notification that her AFDC and Food Stamp benefits were being terminated pursuant to the AFDC and Food Stamp sponsor-to-alien income deeming statutes and the accompanying regulations.

The AFDC and Food Stamp sponsor-to-alien income deeming statutes, 42 U.S.C. § 615(a)[4] and 7 U.S.C.

dent status may become a public charge, if admitted. In such cases, a consul or other United States official may require a sponsorship affidavit signed by a United States citizen or permanent resident before granting permanent resident status to an alien. *See* 8 C.F.R. § 103.-2(b) (1992).

4. Section 615(a) provides:

For purposes of determining eligibility for and the amount of benefits under a State plan approved under this part for an individual

§ 2014(i)(1),[5] require that when determining eligibility for, and the amount of benefits available to, a permanent resident alien,[6] the income and resources of such alien's sponsor must be deemed available to the alien for three years after the alien's "entry into the United States." And the regulations define "entry into the United States" to mean entry into the United States as a lawful permanent resident. *See* 45 C.F.R. § 233.51(a), (b),[7] 7 C.F.R. § 273.11(j)(1), (2).[8] Thus, under the regulations, a sponsor's income and resources must be deemed available to an alien for three years after the alien achieves lawful permanent resident status.

In accordance with these regulations, the Fairfax County Department of Human Development determined that Aziz' 1990 AFDC and Food Stamp applications fell within this three-year sponsor-to-alien income deeming period. Thus, before the County could accurately assess her eligibility for AFDC and Food Stamp benefits, or the amount of benefits to which she was entitled, Aziz was required, by regulation, to submit for verification Fakhri's (her sponsor's), income and resources. *See* 45 C.F.R. § 233.51(a); 7 C.F.R. § 273.11(j)(2). She failed to do so on her 1990 applications and this resulted in the termination of her benefits. Aziz then requested and received a state administrative hearing to review the assistance termination. Following the hearing, a hearing officer for the Virginia Department of Social Services issued a decision remanding the determination to the local agency for verification of the family's date of entry into the United States. The local agency, the Fairfax County Department of Human Development, then verified that INS admitted Aziz and Sohail into this

who is an alien described in clause (B) of section 602(a)(33), the income and resources of any person who (as a sponsor of such individual's entry into the United States) executed an affidavit of support or similar agreement with respect to such individual, and the income and resources of the sponsor's spouse, shall be deemed to be the unearned income and resources of such individual (in accordance with subsections (b) and (c) of this section) for a period of three years after the individual's entry into the United States, except that this section is not applicable if such individual is a dependent child and such sponsor (or such sponsor's spouse) is the parent of such child.

5. Section 2014(i)(1) provides:

For purposes of determining eligibility for and the amount of benefits under this chapter for an individual who is an alien as described in section 2015(f)(2)(B) of this title, the income and resources of any person who as a sponsor of such individual's entry into the United States executed an affidavit of support or similar agreement with respect to such individual, and the income and resources of the sponsor's spouse if such spouse is living with the sponsor, shall be deemed to be the income and resources of such individual for a period of three years after the individual's entry into the United States. Any such income deemed to be income of such individual shall be treated as unearned income of such individual.

6. Both statutes also apply to aliens permanently residing in this country under color of law. *See* 42 U.S.C. § 602(a)(33) (1991); 7 U.S.C. § 2015(f) (1988). This category of aliens, however, is not applicable here because Aziz applied for AFDC and Food Stamp benefits as a lawful permanent resident of the United States.

7. § 233.51(a) and (b) state, in pertinent part, as follows:

(a) For a period of three years following entry for permanent residence into the United States, a sponsored alien who is not exempt under paragraph (g) of this section, shall provide the State agency with any information and documentation necessary to determine the income and resources of the sponsor and the sponsor's spouse (if applicable and if living with the sponsor) that can be deemed available to the alien, and obtain any cooperation necessary from the sponsor.

(b) The income and resources of a sponsor and the sponsor's spouse shall be deemed to be the unearned income and resources of an alien for three years following the alien's entry into the United States.

8. § 273.11(j)(1) and (2) state, in pertinent part, as follows:

(1) *Definitions....* "Date of entry" or "Date of admission" means the date established by the Immigration and Naturalization Service as the date the sponsored alien was admitted for permanent residence.

(2) *Deeming of sponsor's income and resources as that of the sponsored alien.* Portions of the gross income and the resources of a sponsor and the sponsor's spouse (if living with the sponsor) shall be deemed to be the unearned income and resources of a sponsored alien for three years following the alien's admission for permanent residence to the United States.

country as permanent residents on September 1, 1989. Therefore, the Department of Human Development again informed Aziz that her eligibility for AFDC and Food Stamp benefits would be restricted by her sponsor's income and resources for three years following September 1, 1989, her date of entry into the United States as a lawful permanent resident.

Aziz now challenges the regulations defining the phrase "entry into the United States", arguing that the definitions lack statutory authority and deprive her of AFDC and Food Stamp benefits she claims she is entitled to under federal law. Specifically, Aziz argues that the phrase "entry into the United States", as used in the AFDC and Food Stamp sponsor-to-alien income deeming statutes, should be given its plain and unambiguous meaning, namely, "physical entry", and that her eligibility for benefits should only be restricted for three years from that date. Under this interpretation, Aziz claims that she would have been eligible for Food Stamp and AFDC benefits in 1990 without regard to her sponsor's income and resources because her benefit applications were filed more than three years after her physical entry into the United States. At issue, then, is whether the challenged regulations are faithful to the parent statutes.

### Analysis

Challenges to an agency's interpretation of a statute it is entrusted to administer are governed by well-settled principles. In such a case, the Court must apply the two-step test articulated in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). First, the Court must determine whether the statutory language itself is plain and unambiguous. If so, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. at 2781. In applying this step of *Chevron*, "the court must look to the particular stat-utory language at issue, as well as the language and design of the statute as a whole." *Sullivan v. Everhart*, 494 U.S. 83, 88, 110 S.Ct. 960, 964, 108 L.Ed.2d 72 (1990) (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988)). If, however, "the statute is "silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2782. *See also Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) ("To sustain the [agency's] application of [a] statutory term, we need not find that its construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings.") (citations omitted); *Shanty Town Assoc. Partnership v. EPA*, 843 F.2d 782, 790 (4th Cir.1988).

These principles, applied here, require that the search for congressional intent begin with an examination of the statutory language itself. *Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2781–82. In pertinent part, both the AFDC and Food Stamp sponsor-to-alien income deeming statutes state:

"For purposes of determining eligibility for and the amount of benefits ... for an individual who is an alien [lawfully admitted for permanent residence], the income and resources of any person who (as a sponsor of such individual's *entry into the United States* ) executed an affidavit of support or similar agreement with respect to such individual ... shall be deemed to be the unearned income and resources of such individual ... for a period of three years after the individual's *entry into the United States.*"

42 U.S.C. § 615(a) (emphasis added). *See* 7 U.S.C. § 2014(i)(1) (emphasis added). Neither statute separately defines the phrase "entry into the United States." [9] By itself,

---

**9.** The term "entry" in immigration law has been given different meanings for different purposes. For some purposes, it has been defined to mean "physical entry". *See* 8 U.S.C. § 1101(a)(13) (1970) (As used in the Immigration and Nationality Act, the term "entry" means "any coming

the language is ambiguous. While it might be read as limited to physical entry, it could also be read to mean entry or admission to this country as a permanent resident, an event that could occur long after any physical entry. In short, no confident conclusion can be drawn from the language itself as to which construction Congress intended.

Aziz argues strenuously that the phrase unambiguously means only physical entry. Yet this argument is refuted by the language itself and beyond this, by the "language and design of [each] statute as a whole." *Sullivan,* 494 U.S. at 89, 110 S.Ct. at 964. Each statute as a whole—its terms, structure and purpose—compels the conclusion that physical entry is not the statutorily relevant event. Instead, it seems that the appropriate triggering event for the statutes is the attainment of permanent resident status. Both statutes state that the income and resources of a sponsor of an alien's entry into the United States shall be deemed to be the unearned income and resources of the alien for three years after such alien's entry into the United States. *See* 42 U.S.C. § 615(a); 7 U.S.C. § 2014(i)(1). The relevant phrase here, "entry into the United States" is preceded in the first instance by the words "sponsor of". This is illuminating. An alien's mere physical entry into the United States does not require sponsorship. A sponsor is only necessary when an alien seeks permanent resident status because the government's goal is to prevent aliens who attain that status (thus becoming eligible for federal welfare benefits) from becoming public charges. And not infrequently, aliens attain permanent resident status long after physically entering this country in some other status. Therefore, the phrase "entry into the United States" must mean something other than mere "physical arrival".

Yet another compelling reason to reject Aziz's argument that the phrase "entry into the United States" unambiguously means physical entry is that to read it so would lead to nonsensical results in some instances. In these instances, each sponsor-to-alien income deeming provision would be rendered a nullity. Consider, for example, an alien who enters the United States on some temporary basis and then six years later applies for permanent residency, obtains a sponsor, and remains in this country pending approval of her application. If, as Aziz argues, the phrase "entry into the United States" unambiguously means "physical entry", then the sponsor's affidavit promising to assist the alien for three years after entry into the United States would be meaningless because three years from the date of physical entry would have long since expired.[10] Surely Congress cannot have intended such a nonsense result. *See United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (a

of an alien into the United States, from a foreign port or place....). By contrast, when an alien physically enters the United States and subsequently seeks an adjustment of status, for example, from "visitor" to "permanent resident", the term "entry" has been defined to mean something other than the alien's physical arrival into the United States. Thus, even though an application for "adjustment of status" may be made years later, the date recorded as the alien's lawful entry as a permanent resident is the date of the order approving the application for adjustment of status and not the earlier date of the alien's physical entry. *See* 8 U.S.C. § 1255(b) (1992); *Medina v. Sullivan,* No. 90–6440, report and recommendation of magistrate judge at 8 (S.D.Fla.1992) (report and recommendation adopted and affirmed by the district court by Order dated July 10, 1992).

**10.** Aziz asserts that this example illustrates the exception rather than the rule because most aliens awaiting approval of their applications for permanent residency leave this country and return to their country of origin. When the application is approved, the alien then returns to the United States. Thus, plaintiff contends that in most instances an alien's physical entry into the United States coincides with the alien's entry into the United States as a lawful permanent resident. From this, plaintiff argues that Congress indeed intended "physical entry" when it used the phrase "entry into the United States" in the AFDC and Food Stamp sponsor-to-alien income deeming statutes. This argument is flawed. When an alien physically enters the country after approval of the application to become a permanent resident, the alien is actually "re-entering" the country. Thus, even under plaintiff's reasoning, the phrase "entry into the United States" is ambiguous as it is unclear whether Congress intended to refer to an alien's initial physical entry into the United States or some subsequent re-entry.

statute should not be read to produce "a result demonstrably at odds with the intentions of its drafters") (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). In sum, the phrase "entry into the United States" in both the AFDC and Food Stamp sponsor-to-alien deeming provisions, 42 U.S.C. § 615(a), 7 U.S.C. § 2014(i)(1), is infected with such ambiguity that no clear meaning can be gleaned from the language itself.

■ Given this, the inquiry proceeds to the second step under *Chevron,* namely, whether the agency's interpretation of the statutory language at issue is based on a permissible construction of the statute. 467 U.S. at 842–43, 104 S.Ct. at 2781–82. The Supreme Court "has long recognized that considerable weight should be accorded to an [agency's] construction of a statutory scheme it is entrusted to administer." *Id.* at 844, 104 S.Ct. at 2782 (citations omitted). *See also Motley v. Heckler,* 800 F.2d 1253, 1254–55 (4th Cir.1986). ("Where Congress has entrusted an agency with implementation of a statutory scheme, that agency's interpretation of the statutory terms is entitled to substantial deference."); *Hicks v. Cantrell,* 803 F.2d 789, 792 (4th Cir.1986) (same); *Fort Mill Tel. Co. v. FCC,* 719 F.2d 89, 91 (4th Cir.1983); *Virginia v. Califano,* 631 F.2d 324, 327 (4th Cir.1980). Applied here, the second step of *Chevron* points persuasively, if not conclusively, to the conclusion that the regulations interpreting the phrase "entry into the United States" in the AFDC and Food Stamp sponsor-to-alien income deeming statutes are not only permissible, they are compelled by the language and structure of the statutes, the legislative history, and the

ten-year record of congressional ratification and approval.

Support for the challenged regulations, which define "entry into the United States" as entry into the United States as a permanent resident alien, *see* 45 C.F.R. § 233.-51(a), (b), *supra* note 7, 7 C.F.R. § 273.-11(j)(1), (2), *supra* note 8, is found not only in the language and structure of the statutes, as explained above, but also in the legislative history. This history makes clear that Congress did not intend the word "entry into the United States" to mean "physical entry", as Aziz argues. Relevant here is not only the legislative history for the AFDC and Food Stamp sponsor-to-alien income deeming provisions, but also the legislative history for the nearly identical Supplemental Security Income ("SSI") sponsor-to-alien income deeming statute, 42 U.S.C. § 1382j(a) (1992), which served as a model for the subsequent AFDC and Food Stamp provisions. As initially proposed, the SSI sponsor-to-alien income deeming provision merely extended the thirty day residency period required for eligibility for SSI benefits to three years. This extension, however, carried with it no legally enforceable requirements with respect to the sponsorship provided for in the deeming provision. *See* S.Rep. No. 408, 96th Cong., 2d Sess. 3 (1979), *reprinted in* 1980 U.S.C.C.A.N. 1277, 1288, 1359. Due to this lack of enforceability, the original proposal was never adopted.[11] Instead, Senator Percy amended the provision to require the sponsor to be financially responsible for the sponsored alien for a period of three years after the permanent resident alien's "entry" into the United States, and to enable the Attorney General to sue the sponsor to enforce the promise. *See* H.R.Conf. Rep. No. 944, 96th Cong., 2d Sess. 71 (1980), *reprinted in* 1980 U.S.C.C.A.N.

---

**11.** In *Tabib v. Sullivan,* No. SA–88–Ca–1061 (W.D.Tex.1990) (order of May 31, 1990, adopting and affirming April 25, 1990 memorandum and recommendation of the magistrate judge), the district court affirmed the magistrate's finding that "entry into the United States" in the SSI sponsor-to-alien income deeming provision means "physical entry". In reaching that conclusion, the magistrate relied on the legislative history of the original SSI sponsor-to-alien income deeming provision. This reliance is mis-

placed because that version of the SSI sponsor-to-alien income deeming amendment was never enacted. *See Medina v. Sullivan,* No. 90–6440, report and recommendation of magistrate judge at 14 (S.D.Fla.1992) ("The major flaw in the *Tabib* court's analysis is the mistaken belief that Congress enacted § 1382j(a) to lengthen the thirty-day residency requirement.") (report and recommendation adopted and affirmed by the district court by Order dated July 10, 1992)).

1277, 1418; 125 Cong.Rec. 34,612–34,616 (1979). In conference, Congress further refined the amendment so that it simply became a requirement that the income and resources of the sponsor be deemed available to the sponsored alien. H.R.Conf.Rep. No. 944 at 71–72, *reprinted in* 1980 U.S.C.C.A.N. at 1418–1419.[12] As this legislative history illustrates, Congress intended a sponsor's income to be attributed to the alien for three years after the sponsored alien enters this country as a lawful permanent resident to prevent such alien, who would then be eligible for federal welfare benefits, from becoming a public charge. Thus, the legislative history supports the conclusion that the statutorily relevant event is the attainment of a status making the alien eligible for benefits, not the alien's physical entry into this country.

The following year this SSI language was incorporated into the AFDC and Food Stamp sponsor-to-alien income deeming statutes, 42 U.S.C. § 615(a); 7 U.S.C. § 2014(i)(1). Given this timing, the legislative history of the SSI provision is particularly relevant to understanding congressional intent with respect to the AFDC and Food Stamp provisions, especially since no contrary indication is found in the legislative history of the AFDC and Food Stamp sponsor-to-alien income deeming statutes. In general, the common purpose for these two provisions, consistent with the goal of the Immigration and Naturalization Act, is to ensure that those aliens who are required to obtain sponsorship affidavits before being granted permanent resident status will not, regardless of the veracity of the affiant, become a burden on the United States for at least three years after becoming eligible for federal benefits. *See* H.R.Rep. No. 158, 97th Cong., 1st Sess. 299 (1981); H.R.Conf.Rep. No. 377, 97th Cong.,

1st Sess. 218 (1981), *reprinted in* 1981 U.S.C.C.A.N. 2250, 2315; 8 U.S.C. § 1182(a)(4) (1992). This common purpose is reiterated more specifically in the legislative history of each statutory provision. With respect to the AFDC sponsor-to-alien income deeming provision, Congress stated:

Under current law and regulations in order for an alien to be eligible for AFDC payments, he must be lawfully admitted for permanent residence.... However, under current law, the income of a sponsor of an alien legally admitted to the U.S. is not counted as income available to the alien under the AFDC program.... Section 328 would provide that, for purposes of eligibility for AFDC, legally admitted aliens who apply for benefits ... would be deemed to have the income and resources of their immigration sponsors available for their support for a period of 3 years after their entry into the United States.

H.R.Rep. No. 158 at 299. Similarly, with respect to the Food Stamp sponsor-to-alien income deeming provision, Congress stated that: "[s]ponsors who have executed an affidavit of support or similar agreement as a prerequisite for entry of a permanent resident alien would have the portion of their income [exceeding 130% of the Federal poverty level] attributed to the alien ... during the 3 years following the alien's entry." H.R.Conf.Rep. No. 377 at 218, *reprinted in* 1981 U.S.C.C.A.N. at 1965, 2315. This legislative history, consistent with the legislative history supporting the SSI sponsor-to-alien income deeming statute, makes it pellucidly clear that Congress intended a sponsor's income to be deemed available to a sponsored alien applying for AFDC or Food Stamp benefits for three years after such alien becomes eligible for such benefits, namely, after such alien be-

**12.** As noted in *Medina v. Sullivan:*

While it would not directly prevent a sponsor from reneging on this promise of support, if he or she did renege the alien would not be permitted to receive SSI benefits because the sponsor's resources would be deemed to that alien. This was hoped to deter a sponsor's breach. Ultimately, with the adoption of the Sponsor–to–Alien Deeming provision, Con-

gress rejected the notion of a mere residency requirement or waiting period in favor of a deeming period.

*Medina v. Sullivan*, No. 90–6440, report and recommendation of magistrate judge at 15 (S.D.Fla.1992) (report and recommendation adopted and affirmed by the district court by Order dated July 10, 1992).

comes a lawful permanent resident. Thus, the challenged regulations, which have defined "entry into the United States" as entry into the United States as a lawful permanent resident, are due deference here as they are not only permissible constructions of the statutes at issue, they are also compelled by the legislative history.

■ Yet another reason to give deference to the regulations challenged here is that Congress has long acquiesced in them. *See Kirkhuff v. Nimmo,* 683 F.2d 544, 549 (D.C.Cir.1982) ("[D]eference is due to an agency's construction of a statute when Congress becomes aware of, and fails to correct, that construction."). Such inaction is considered *de facto* ratification by Congress. *See Power Reactor Dev. Co. v. International Union of Elec., Radio & Mach. Wkrs.,* 367 U.S. 396, 409, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924 (1961) (Where there is evidence of congressional knowledge of and acquiescence in a long-standing agency construction of its own powers, courts have concluded that the agency construction has received *de facto* ratification by Congress.); *Ivanhoe Irrigation Dist. v. McCracken,* 357 U.S. 275, 293, 78 S.Ct. 1174, 1184, 2 L.Ed.2d 1313 (1958); *Brooks v. Dewar,* 313 U.S. 354, 361, 61 S.Ct. 979, 982, 85 L.Ed. 1399 (1941). The argument for *de facto* congressional ratification is especially compelling where, as here, the challenged regulatory interpretations have existed since 1981 in the case of the AFDC Program, and since 1982 in the case of the Food Stamp Program. *See* 46 Fed.Reg. 46,750, 46,760 (1981); 47 Fed.Reg. 55,463 (1982). Since 1982, both the AFDC provisions of the Social Security Act and the Food Stamp Act have been subject to at least annual amendments by Congress. Yet there has been no attempt by Congress in the last ten years to overturn the consistent regulatory interpretations of the statutory phrase "entry into the United States" in the AFDC and Food Stamp sponsor-to-alien income deeming provisions. Thus, in light of this congressional ratification, the regulations are due deference here.

*Conclusion*

For the reasons stated above, the Court holds that the phrase "entry into the United States" in the AFDC and Food Stamp sponsor-to-alien income deeming provisions, 42 U.S.C. § 615(a), 7 U.S.C. § 2014(i)(1), is ambiguous, and that the consistent regulatory interpretations of that phrase in 45 C.F.R. § 233.51(a), (b) and 7 C.F.R. § 273.-11(j)(1), (2) are entitled to deference here as those interpretations are compelled by the language and structure of the statutes, the legislative history, and the ten-year record of congressional ratification and approval.

An appropriate Order will enter.