Basilisa **DIGAMON**, Plaintiff,

v.

Louis W. **SULLIVAN**, M.D., **Secretary of Health and Human Services, Defendant.**

Civ. A. No. MJG–91–2302.

United States District Court, D. Maryland.

Jan. 29, 1993.

---

Karen J. Sarjeant, Legal Services for Senior Citizens, Legal Aid Bureau, Inc., Silver Spring, MD, for plaintiff.

Claire S. Hoffman, Office of Gen. Counsel, Dept. of Health and Human Services, Richard D. Bennett, U.S. Atty., and Larry D. Adams, Asst. U.S. Atty., Baltimore, MD, for defendant.

## ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION ABSENT TIMELY OBJECTION

GARBIS, District Judge.

This Order is issued upon consideration of the Report and Recommendation of the United States Magistrate Judge dated December 22, 1992, and upon the expiration of the time allowed for objections pursuant to Rule 72(b) of the Federal Rules of Civil Procedure with no objection having been received.

The said Magistrate Judge's Report and Recommendation is hereby ADOPTED as follows:

1. Plaintiff's Motion for Summary Judgment is DENIED.

2. Defendant's Motion for Summary Judgment is GRANTED.

3. Judgment shall be entered for Defendant by separate Order.

4. The Clerk is directed to mail a copy of this Order to all parties or their respective counsel of record.

SO ORDERED.

## REPORT AND RECOMMENDATION

KLEIN, United States Magistrate Judge.

This case is brought under 42 U.S.C. §§ 405(g) & 1383(c)(3) for review of a final decision of the Secretary of Health and Human Services ("Secretary") denying Basilisa Digamon's claim for Supplemental Security Income ("SSI") based on age. Judge Marvin J. Garbis referred the matter to the undersigned for a report and recommendation. Paper No. 6. Currently before the Court are the parties' cross-motions for summary judgment (Papers No. 9 & 14) and plaintiff's reply (Paper No. 17). A motions hearing was held on October 21, 1992. At issue is the appropriate date of Mrs. Digamon's entry into United States for purposes of sponsor-to-alien deeming of assets. Mrs. Digamon argues that the Secretary's deeming regulations conflict with the provisions of the Social Security Act at United States Code Title 42, Section 1382j(a).

### Background

Mrs. Digamon and her husband, Narcisco, physically entered the United States with B–2 tourist visas on November 30, 1984. Tr. 30, 126.[1] Mr. Digamon was naturalized on August 7, 1987 and then petitioned for an adjustment of Mrs. Digamon's immigration status to one of legal permanent residence ("LPR"). Tr. 31, 126.[2] Mrs. Digamon was granted that status on October 28, 1987. Tr. 30. On January 20, 1988, Mrs. Digamon applied for SSI on the basis of age under Title XVI of the Social Security Act. Tr. 69.[3] Initially, her

---

1. Mrs. Digamon's application for benefits states that she began living in the United States in April 1978. Tr. 71. At the hearing, her husband explained that they had visited the United States for several months in 1978 but had gone back to the Philippines. Tr. 49–50. The Digamons have resided in the United States continuously since November 30, 1984. Tr. 37.

References are to the transcript of administrative proceedings filed with defendant's Answer, Paper No. 7.

2. A former Philippine national, Mr. Digamon served in the U.S. armed forces during World War II. Tr. 31. Apparently, once naturalized, Mr. Digamon was the only person who could petition for an adjustment of his wife's immigration status. Tr. 31.

3. Mrs. Digamon was born on January 9, 1921. Tr. 69.

claim was granted and she received one SSI payment in March 1988. Tr. 133. Benefits were then suspended for failure to provide necessary information. Tr. 32, 127.[4] Mrs. Digamon filed a request for reconsideration, Tr. 95, which was denied. Tr. 117. She requested a hearing on her claim, Tr. 119, and a hearing was held before Administrative Law Judge ("ALJ") Arthur I. Steinberg on December 21, 1989. Tr. 24–53.[5] ALJ Steinberg issued a recommended decision favorable to Mrs. Digamon on May 22, 1990. Tr. 10–15. The Appeals Council denied the claim on June 18, 1991, Tr. 5–6, and thus the Appeals Council's decision became the final, reviewable decision of the Secretary.

## Issue

At issue in this case is the appropriate deeming period which applies to Mrs. Digamon. In order to fix that deeming period, the Court must determine whether Mrs. Digamon "entered" the United States when she physically entered the country, or when she was granted an adjustment in status to LPR. Mrs. Digamon argues that the Social Security Act and the Secretary's regulations conflict. If Mrs. Digamon's preferred construction is adopted, her deeming period would begin in 1984 rather than 1987. Thus, at the time of her 1988 application, Mrs. Digamon would be eligible for SSI because her sponsor's assets would no longer be deemed to be hers.[6]

To better understand the issue of construction posed, a discussion of the statutory and regulatory background is necessary. The Social Security Act at 42 U.S.C. § 1382j(a) provides that the income of an alien-applicant's sponsor be deemed to the alien for three years after the alien *enters* the country. Specifically, the statute provides:

For purposes of determining eligibility for and the amount of benefits under this subchapter for an individual who is an alien, the income and resources of any person who (as a sponsor of such individual's entry into the United States) executed an affidavit of support or similar agreement with respect to such individual, and the income and resources of the sponsor's spouse, shall be deemed to be the income and resources of such individual (in accordance with subsections (b) and (c) of this section) for a period of three years after the individual's *entry* into the United States. Any such income deemed to be income of such individual shall be treated as unearned income of such individual.

42 U.S.C. § 1382j(a) (1988) (emphasis added). The term "entry" is not defined in the statute.

The Secretary's regulations implementing § 1382j(a) at 20 C.F.R. §§ 416.1160(a)(3) & 416.1204 (1992) define "entry" as "admission to permanent residence." Those regulations provide in relevant part:

§ 416.1160—What is deeming of income

\*    \*    \*    \*    \*    \*

(a)(3) *Sponsor of an alien.* If you are an alien who has a sponsor and you first apply for SSI benefits after September 30, 1980, we look at your sponsor's income to decide whether we must deem some of it to be yours. This rule applies for 3 years after you are admitted to the United States for permanent residence and regardless of whether you live in the same household as your sponsor. We deem your sponsor's income to you because your sponsor agreed to support you (signed an affidavit of support) as a condition of you admission to the United States.

---

4. Mrs. Digamon provided the sponsoring affidavit of support of her brother which was rejected because of his failure to submit an income tax return. Tr. 32, 107–09, 114. She then submitted the affidavit of her daughter on August 25, 1987. Tr. 32, 110–11, 114. By virtue of the sponsor-to-alien deeming regulations, the daughter's assets rendered Mrs. Digamon ineligible for SSI. Tr. 32–33. It is that denial which is the basis for the instant lawsuit.

5. Mrs. Digamon was represented by counsel at the hearing but did not testify. Her attorney reports that Mrs. Digamon has limited ability in English. Tr. 132.

6. Mrs. Digamon successfully reapplied for benefits in October 1990. Paper No. 9, at 4 n. 2. Thus, an award of benefits from January 1988 to October 1990 is at stake in this litigation.

**§ 416.1204—Deeming of resources of the sponsor of an alien.**

The resources of an alien who first applies for SSI benefits after September 30, 1980, are deemed to include the resources of the alien's sponsor for 3 years after the alien's date of admission in to the United States. The *date of admission* is the date established by the Immigration and Naturalization Service as the date of admission for permanent residence.

(emphasis in the original).

In her Motion, Mrs. Digamon argues that: "(1) the Secretary's interpretation contravenes the statutory provision on its face; and (2) Congress never intended to toll the three year sponsor to alien deeming period." The Secretary defends his regulation as "reasonable" and "permissible."

### Standard of review

■ The Court reviews challenges to an agency's interpretation of a statute under the two-part test articulated in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). First, the Court asks whether the plain language of the statute is unambiguous. *Id.* at 842, 104 S.Ct. at 2781. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. at 2781–82. To that end, review is not only of the particular statutory language at issue, but the "language and design of the statute as a whole." *Sullivan v. Everhart*, 494 U.S. 83, 89, 110 S.Ct. 960, 964–65,

108 L.Ed.2d 72 (1990) (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817–18, 100 L.Ed.2d 313 (1988)).

Second, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782. The agency's interpretation need not be the only one or the best one. *Id.* at 843 n. 11, 104 S.Ct. at 2782 n. 11. Rather, the Court determines only "whether the agency's construction is 'rational and consistent with the statute.'" *Sullivan*, 494 U.S. at 89, 110 S.Ct. at 964–65 (quoting *NLRB v. United Food & Commercial Workers Union*, 484 U.S. 112, 122, 108 S.Ct. 413, 416, 98 L.Ed.2d 429 (1987)).

### Analysis

■ While the precise issue for decision in this case is one of first impression in this Circuit, it is by no means the only time the issue has been litigated and discussed. Indeed, the Court has the benefit of two unpublished district court opinions from other circuits which are on point. *See Medina v. Sullivan*, No. 90–6440–Civ–Moreno, 1991 WL 477706 (S.D.Fla. Dec. 26, 1991); *Tabib v. Sullivan*, Civ. No. SA–88–CA–1062 (W.D.Tex. April 25, 1990).[7] In addition, a sister district in this Circuit has offered a well-reasoned analysis of the SSI sponsor-to-alien deeming provision. *See Aziz v. Sullivan*, 800 F.Supp. 1374 (E.D.Va.1992).[8]

Applying step one of the *Chevron* test, the Court must determine whether the

---

**7.** The magistrate judge's report and recommendation in *Medina* has been submitted by the Secretary at Paper No. 18. On facts similar to the instant case, the magistrate judge recommended acceptance of the Secretary's interpretation of the statute. The magistrate judge's report and recommendation in *Tabib* has been submitted by Mrs. Digamon at Paper No. 9, Exhibit 3. In that case, the magistrate judge recommended acceptance of the plaintiff's construction of the statute. In both *Medina* and

*Tabib* the magistrate judge's recommended decision was adopted by the district court.

**8.** At issue in *Aziz* were the sponsor-to-alien deeming provisions of the Aid to Families with Dependent Children and Food Stamp programs. *Compare* 42 U.S.C. § 615(a) (1988) & 7 U.S.C. § 2014(i)(1) (1988) *with* 45 C.F.R. § 233.51(a), (b) (1991) & 7 C.F.R. 273.11(j)(1), (2) (1992). The SSI provision—discussed at length in *Aziz*—is nearly identical and served as a model for the

term "entry" in § 1382j(a) is ambiguous.[9] The dictionary definition of "entry" is "to go or come into a material place: make a physical entrance or penetration." *Webster's Third New International Dictionary* 756 (1981).[10] "Entry" is also defined as "to come into a group: gain admission." *Id.* In immigration law, the term "entry" also has different denotations. On one hand, it is the "coming of an alien into the United States from a foreign port or place ..." 8 U.S.C. § 1101(a)(13) (1988). On the other hand, an alien in the United States seeking an adjustment of status may have the date of "entry" modified to the date of the order granting the adjustment application. *Medina,* 1991 WL 477706 at *3 accord *Aziz,* 800 F.Supp. at 1377 n. 9; *see* 8 U.S.C. § 1255(b) (1988 & Supp. III 1991).[11] In isolation, the term "entry" is ambiguous. *Medina,* 1991 WL 477706 at *3; *see Aziz,* 800 F.Supp. at 1377–78; *but see Tabib,* slip op. at 11.

The Court's inquiry does not end there, however. The statute may be read as a whole to determine the intent of Congress. So read, Mrs. Digamon's construction is untenable. First, in the definitions section of the appropriate subchapter of the SSI statute, an "aged, blind, or disabled individual" must be

> a resident of the United States, and is either (I) a citizen or (II) an alien lawfully admitted to permanent residence or otherwise permanently residing in the United States under color of law ...

42 U.S.C. § 1382c(a)(1)(B)(i) (1988 & Supp. II 1990). That definition excludes illegal aliens but includes aliens who have properly expressed the intent to become permanent residents. The triggering event is permanent residence and not mere physical entry. *See Aziz,* 800 F.Supp. at 1378.

Second, within the same section of the statute, Congress has stated that the deeming provision is inapplicable to aliens who become aged, blind, or disabled after the alien's "admission into the United States for permanent residence." 42 U.S.C. § 1382j(f)(1) (1988); *Medina,* 1991 WL 477706 at *4. Again, permanent residence rather than physical entry triggers the statute.

Third, a reading of all of paragraph (a) of § 1382j shows that Congress used the terms "entry" and "admission to permanent residence" interchangeably. *Medina,* 1991 WL 477706 at *4. "Entry" is used twice in paragraph (a). The first usage is preceded by "sponsor of." Sponsorship is only necessary when an alien seeks LPR status; a mere physical entry does not require sponsorship. *Aziz,* 800 F.Supp. at 1378. Thus, use of that term cannot mean simply "physical entry." *Id.* The second usage states that assets are deemed "for a period of three years after the individual's entry into the United States." The parallel structure of the provision dictates that an "entry" for which the alien obtained sponsorship is the same "entry" from which assets are deemed. *Medina,* 1991 WL 477706 at *4.

Mrs. Digamon argues that *Medina* and *Aziz* are "back door" interpretations of the statute. That is, she contends those courts found ambiguity in the statute by comparing the effect of a particular statutory construction on the plaintiff rather than reviewing the statute's plain language for

---

other two. *Aziz,* 800 F.Supp. at 1379. The *Aziz* court found in favor of the Secretary.

**9.** In her Motion, Mrs. Digamon prefers her interpretation of *INS v. Cardoza–Fonseca,* 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987), to an application of *Chevron.* At the motions hearing she backed away from that position, arguing instead that the Court should apply *Chevron* but not beyond the first step.

**10.** The Supreme Court directs that undefined statutory terms be accorded their ordinary meaning. *Russello v. United States,* 464 U.S. 16, 21, 104 S.Ct. 296, 299–00, 78 L.Ed.2d 17 (1983).

**11.** In her Reply, Mrs. Digamon cites that body of law which stands for the proposition that an "adjustment of status" *does not* constitute an "entry." *See Pereira–Barreira v. INS,* 523 F.2d 503, 507 (2d Cir.1975); *see also Khadjenouri v. INS,* 460 F.2d 461, 462 (9th Cir.1972); *Ferrante v. INS,* 399 F.2d 98, 104–05 (6th Cir.1968). Those cases are inapposite as they involve construction of 8 U.S.C. § 1251(f) (1988) (repealed 1990), as applied to aliens defrauding the government, particularly through sham marriages. *Medina,* 1991 WL 477706 at *4.

ambiguity. Since "entry" is not specifically defined in the statute, Mrs. Digamon asks the Court to apply the ordinary meaning of the word, which she argues is a physical arrival. *Russello*, 464 U.S. at 21, 104 S.Ct. at 299. In analyzing the statute thus far, a discussion of the effect of one construction or another on Mrs. Digamon or any putative plaintiff has been avoided. As the foregoing analysis demonstrates, however, the intent of Congress can be determined solely through tools of statutory construction by reading the statute as a whole. So read, the statute is not ambiguous. On that basis alone, Mrs. Digamon's argument fails at step one of the *Chevron* test.

Even if the Court analyzes the Secretary's regulations at step two, Mrs. Digamon cannot prevail. At step two of *Chevron*, the Court inquires whether the agency's interpretation of the statutory language is based on a permissible construction of the statute. The *Medina* court ventured that the Secretary's interpretation was "not only a permissible construction of the statute, but the only construction that could reasonably comport with the statute's legislative history, design and purpose." *Medina*, 1991 WL 477706 at *5. A discussion of the legislative history is provided in *Aziz:*

> As initially proposed, the SSI sponsor-to-alien income deeming provision merely extended the thirty day residency period required for eligibility for SSI benefits to three years. This extension, however, carried with it no legally enforceable requirements with respect to the sponsorship provided for in the deeming provision. *See* S.Rep. No. 408, 96th Cong., 2d Sess. 3 (1979), *reprinted in* 1980 U.S.C.C.A.N. 1277, 1288, 1359. Due to this lack of enforceability, the original proposal was never adopted. Instead, Senator Percy amended the provision to require the sponsor to be financially responsible for the sponsored alien for a period of three years after the permanent resident alien's "entry" into the United States, and to enable the Attorney General to sue the sponsor to enforce the promise. *See* H.R.Conf.Rep.
>
> No. 944, 96th Cong., 2d Sess. 71 (1980), *reprinted in* 1980 U.S.C.C.A.N. 1277, 1418; 125 Cong.Rec. 34,612–34,616 (1979). In conference, Congress further refined the amendment so that it simply became a requirement that the income and resources of the sponsor be deemed available to the sponsored alien. H.R.Conf.Rep. No. 944 at 71–72, *reprinted in* 1980 U.S.C.C.A.N. at 1418–1419. As this legislative history illustrates, Congress intended a sponsor's income to be attributed to the alien for three years after the sponsored alien enters this country as a lawful permanent resident to prevent such alien, who would then be eligible for federal welfare benefits, from becoming a public charge. Thus, the legislative history supports the conclusion that the statutorily relevant event is the attainment of a status making the alien eligible for benefits, not the alien's physical entry into this country.

*Aziz*, 800 F.Supp. at 1379–80 (footnotes omitted).

The case upon which Mrs. Digamon relies, *Tabib*, was wrongly decided. The *Tabib* court mistook legislative history in support of a "waiting period" for alien SSI applications as the intent of Congress. *Medina*, 1991 WL 477706 at *6; *accord Aziz*, 800 F.Supp. at 1379–80. Congress never enacted a waiting period. Rather, Congress enacted a "deeming period" to keep sponsors from dishonoring their affidavits of support once the alien was admitted to permanent residence. *Medina*, 1991 WL 477706 at *6; *accord Aziz*, 800 F.Supp. at 1380 n. 12. In many circumstances, like those in Mrs. Digamon's case, initiation of a three year deeming period upon grant of LPR status inevitably increases the time an alien must wait for benefits. Mrs. Digamon contends that since the Social Security Act is a remedial statute, it must be read broadly. Specifically, under her reading of congressional intent, the statute should be read so as not to toll the deeming period. She has confused a waiting period, which is not the law, with a deeming period. The two are different as a comparison of the

legislative history of the unenacted bills and the conference report makes clear.

A final reason Mrs. Digamon's construction is insupportable is the effect her construction would have. Respecting her construction of the term "entry" would render the statute a nullity. Mrs. Digamon was granted LPR status thirty-six months after entering the country. She applied for SSI benefits three months later. If her "entry" is put at her arrival, she avoids the deeming of her sponsor's assets entirely. This application under the facts of the case is "demonstrably at odds" with the intent of Congress. *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). Congress requires the deeming of a sponsor's assets for three years. An "entry" when the sponsored alien is granted LPR status renders the sponsorship (for SSI purposes, at least) *and* the deeming period meaningless. This eventuality is even more obvious if an alien applies for LPR status over three years after arriving in the United States. If "entry" means "arrival" in that case, the government would require a sponsorship before one existed. In addition, the deeming period would have expired before the sponsorship began. *See Aziz*, 800 F.Supp. at 1378; *Medina*, 1991 WL 477706 at *7. "Surely Congress cannot have intended such a nonsense result." *Aziz*, 800 F.Supp. at 1378.

### Conclusion

Accordingly, for the foregoing reasons, it is respectfully RECOMMENDED that upon expiration of the time for taking exception to this report, an Order be entered DENYING the plaintiff's motion for summary judgment and GRANTING the defendant's motion for summary judgment.

DATE: December 22, 1992.